KENNETH MYERS *vs.* COMMONWEALTH & another.[1]

Suffolk.    May 9, 1973. — July 17, 1973.

Present: TAURO, C.J.; REARDON, QUIRICO, BRAUCHER, HENNESSEY, KAPLAN, & WILKINS, JJ.

*Probable Cause.   Practice, Criminal,* Probable cause hearing.   *Constitutional Law,* Due process of law, Equal protection of laws, Probable cause.   *Words,* "Probable cause."

Discussion of the purpose of a probable cause hearing and the minimum quantum of evidence necessary to bind over a defendant for trial in the Superior Court.   [846–850]

General Laws, c. 276, § 38, gives a defendant the rights, within the same bounds as at trial, to cross-examine prosecution witnesses and present testimony in his own behalf before the examining magistrate determines whether there is probable cause to bind him over for trial in the Superior Court.   [850–858] QUIRICO, J., concurring in the result.

PETITION filed in the Supreme Judicial Court for the county of Suffolk on March 19, 1973.

The case was reserved and reported by *Hennessey, J.*

*Charles J. Artesani, Jr.,* Assistant District Attorney, for the Commonwealth.

---

[1] Municipal Court of the Roxbury District.

*Elliot R. Levine* of Ohio (*Roderick L. Ireland* with him) for Kenneth Myers.

TAURO, C.J.   This is a petition for a writ of certiorari and related relief brought under G. L. c. 211, § 3,[2] asking the court to exercise its supervisory power "to correct and prevent errors and abuses" in probable cause hearings conducted in the District Courts of the Commonwealth. The petitioner asks us to vacate a finding of probable cause in the Municipal Court of the Roxbury District and remand the case to that court for a new probable cause hearing consistent with the requirements of G. L. c. 276, § 38, which he alleges were violated in his initial preliminary hearing.   This petition comes before us upon a reservation and report without decision by a single justice of this court upon the pleadings and a statement of agreed facts.

Although we will review interlocutory rulings in criminal cases under our general superintendence powers "only in the most exceptional circumstances," *Gilday* v. *Commonwealth*, 360 Mass. 170, 171, we can and should act "at whatever stage in the proceedings it becomes necessary to protect substantive rights." *Barber* v. *Commonwealth*, 353 Mass. 236, 239.   The question before us is whether the manner in which the Municipal Court judge conducted the petitioner's probable cause hearing violated his "substantive" rights.

The pertinent facts may be summarized briefly.   On February 23, 1973, a preliminary examination was held

[2] Section 3, as amended by St. 1956, c. 707, § 1, reads in part: "The supreme judicial court shall have general superintendence of all courts of inferior jurisdiction to correct and prevent errors and abuses therein if no other remedy is expressly provided; and it may issue writs of error, certiorari, mandamus, prohibition, quo warranto and all other writs and processes to such courts . . . which may be necessary to the furtherance of justice and to the regular execution of the laws. In addition to the foregoing, the justices of the supreme judicial court shall also have general superintendance of the administration of all courts of inferior jurisdiction . . . and it may issue such writs . . . and such orders, directions, and rules as may be necessary or desirable for the furtherance of justice, the regular execution of the laws, the improvement of the administration of such courts, and the securing of their proper and efficient administration."

pursuant to G. L. c. 276, § 38, before a judge of the
Municipal Court to determine whether there was prob-
able cause to support the prosecution of the petitioner on
charges of rape, assault by means of a dangerous weapon,
breaking and entering at night, and breaking and enter-
ing at night and committing rape of a person lawfully
therein. At that probable cause hearing, only the com-
plaining witness was called to testify on behalf of the
Commonwealth. At the end of direct examination the
petitioner's counsel began his cross-examination of the
witness. When the petitioner's counsel questioned the
complaining witness about her alleged belief in witch-
craft, the judge stated that he had heard enough testi-
mony to find probable cause which made further cross-
examination by the petitioner's counsel unnecessary. The
petitioner's counsel stated to the court that he wished to
complete his cross-examination of the complaining wit-
ness, and introduce further evidence [3] in the defendant's
behalf. The judge repeated his finding of probable cause
and terminated the hearing. The question before us is
whether the judge's finding of probable cause before the
petitioner had an opportunity to complete cross-examina-
tion of the complaining witness and to present relevant
testimony and witnesses in his own behalf violated the
petitioner's "substantive rights."

1. The rules governing the conduct of preliminary
hearings in the Commonwealth are summarily set forth
in G. L. c. 276, § 38, "The court or justice before whom
a person is taken upon a charge of crime shall, as soon as
may be, examine on oath the complainant and the wit-
nesses for the prosecution, in the presence of the defend-
ant, relative to any material matter connected with such
charge. . . . [*T*]*he witnesses for the prisoner, if any*,

---

[3] The petitioner's counsel told the court that he had a witness whom
he wanted to present in behalf of the defendant's case, a medical
report on the alleged victim which was made by the physician at the
Boston City Hospital the morning of the alleged rape, and a psychi-
atric evaluation of the complaining witness which was conducted by
a staff psychiatrist of the Roxbury Court Clinic after a motion re-
questing such an examination prior to the probable cause hearing
had been granted by a judge of that court.

*shall be examined on oath, and he may be assisted by counsel in such examination and in the cross examination of the witnesses in support of the prosecution"* [4] (emphasis supplied). The Commonwealth contends that this statute should not be interpreted as granting the defendant an absolute "inflexible" right to cross-examine prosecution witnesses and present testimony in his own behalf at the preliminary hearing because the examining magistrate has the discretion to find probable cause after listening only to the witnesses for the prosecution. The petitioner argues that c. 276, § 38, grants defendants at such hearings *mandatory* fundamental procedural rights to confront their accusers and present testimony in their own behalf.

The petitioner's construction of the statute is supported by its express mandatory terms ("witnesses for the prisoner, if any, *shall* be examined" [emphasis supplied]). "It is difficult to see how language could have been framed which would more clearly and categorically impose an absolute obligation." *Assessors of Springfield* v. *New England Tel. & Tel. Co.* 330 Mass. 198, 201. However, "[t]he word 'shall' as used in statutes . . . is not of inflexible signification and not infrequently is construed as permissive or directory in order to effectuate a legislative purpose. *Cheney* v. *Coughlin,* 201 Mass. 204. *Rea* v. *Alderman of Everett,* 217 Mass. 427, 430." *Swift* v. *Registrars of Voters of Quincy,* 281 Mass. 271, 276. Therefore, the controversy before us as to the proper statutory construction of c. 276, § 38, cannot be resolved without examining the purposes (and procedure) of a probable cause hearing in order to determine which construction of the statute best effectuates those purposes.

2. The judge's chief task at a preliminary hearing is

---

[4] See also Rule 6 of the Initial Rules of Criminal Procedure for the District Courts of Massachusetts, which states: "An unrepresented defendant who has pleaded not guilty to any complaint shall be advised by the judge at the time of his *hearing or trial* that on any material matter pertaining to the offense charged he has the following rights: — (a) to cross examine any witness offered by the prosecution; and (b) subject to cross examination to offer testimony by himself or any other witness" (emphasis supplied).

to determine whether the defendant should be bound over for trial in the Superior Court. See G. L. c. 218, § 30. Defendants are held for trial only if the examining magistrate finds (1) "that a crime has been committed" [5] *and* (2) "that there is probable cause to believe the prisoner guilty." G. L. c. 276, § 42 (and see G. L. c. 276, § 41). These two requirements are designed to establish an effective bind-over standard which distinguishes between groundless or unsupported charges and meritorious prosecutions. Thus, the preliminary hearing's primary function is to screen out at this early but critical stage of the criminal process those cases that should not go to trial, thereby sparing individuals from being held for trial, and from being unjustifiably prosecuted (but see fn. 16). See *Jennings* v. *Superior Court of Contra Costa County,* 66 Cal. 2d 867, 880.

The United States Supreme Court recognized the importance of the preliminary hearing's screening function in *Coleman* v. *Alabama,* 399 U. S. 1, where the court held that Alabama's preliminary hearing is a "critical stage" of the State's criminal process at which the accused is entitled to the aid of counsel. "Plainly the guiding hand of counsel at the preliminary hearing is essential to protect the indigent accused against an erroneous or improper prosecution. First, the lawyer's skilled examination and cross-examination of witnesses may expose fatal weaknesses in the State's case that may lead the magistrate to refuse to bind the accused over. Second, in any event, the skilled interrogation of witnesses by an experienced lawyer can fashion a vital impeachment tool for use in cross-examination of the State's witnesses at the trial, or preserve testimony favorable to the accused of a witness who does not appear at the trial. Third, trained

---

[5] The examining magistrate must discharge the defendant if the prosecutor fails to introduce any evidence to support each element of the crime charged because in such a case the prosecutor has failed to show "that a crime has been committed." See *Pittman* v. *Superior Court of Los Angeles County,* 256 Cal. App. 2d 795 (committing magistrate's decision to bind over was in error because there was no proof of the gambling charge since no evidence was introduced at the preliminary hearing that the defendant was playing cards for money).

counsel [within the limitations of relevancy] can more effectively discover the case the State has against his client and make possible the preparation of a proper defence to meet that case at the trial. Fourth, counsel can also be influential at the preliminary hearing in making effective arguments for the accused on such matters as the necessity for an early psychiatric examination or bail." P. 9. In light of the reasoning in the *Coleman* case, we held in *Commonwealth* v. *Britt,* 362 Mass. 325, 330–331, that probable cause hearings were "a critical stage" of criminal proceedings in the Commonwealth.

Since the examining magistrate's chief task is to determine whether there is sufficient credible evidence to proceed to trial which justifies binding the defendant over, his determination of probable cause to bind over is somewhat analogous in function to the trial court's ruling on a motion for a directed verdict as to whether there is sufficient evidence to send the case to the jury. Unfortunately, since this court has never defined the quantum of evidence needed to satisfy probable cause to bind over, some District Court judges have equated probable cause to bind over with probable cause for arrest (and search).

In finding probable cause for arrest, the examining magistrate has determined only that at the time *of the arrest* (or at the time when the warrant for arrest is requested), the "facts and circumstances within . . . [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the defendant had committed or was committing an offence." *Commonwealth* v. *Stevens,* 362 Mass. 24, 26. In this context, the term "probable cause" "means less than evidence which would justify condemnation." *Locke* v. *United States,* 7 Cranch 339, 348. Furthermore, such a finding of probable cause may rest upon hearsay evidence which is not admissible in a criminal trial. *Draper* v. *United States,* 358 U. S. 307, 311. As the court stated in *Brinegar* v. *United States,* 338 U. S. 160, 173, "There is a large difference between the two things to be proved [guilt and probable

cause to arrest or search] as well as between the tribunals which determine them, and therefore a like difference in the quanta and modes of proof required to establish them." See *United States* v. *Ventresca,* 380 U. S. 102, 108. See also *Commonwealth* v. *Lillis,* 349 Mass. 422, 424.

Similarly, there is a "large difference" between probable cause to arrest [or search] and probable cause to bind over, "and therefore a like difference in the quanta and modes of proof required to establish them." *Brinegar* v. *United States, supra.* A judicial finding of probable cause to arrest validates only the initial decision to arrest the suspect, not the decision made later in the criminal process to hold the defendant for trial. Since many valid arrests are based on reliable hearsay information which could not be introduced at the defendant's trial, probable cause to arrest does not automatically mean that the Commonwealth has sufficient competent legal evidence to justify the costs both to the defendant and to the Commonwealth of a full trial. Therefore the standard of probable cause to bind over must require a greater quantum of legally competent [6] evidence than the probable cause to arrest finding to insure that the preliminary hearing's screening standard is defined in a way that effectuates its purpose. "It is the magistrate who must determine whether the policeman's 'reasonable belief,' when made visible constitutes 'probable cause' to believe a crime has been committed . . . [and] sufficient

---

[6] Since the primary objective of the probable cause hearing is to screen out those cases where the *legally admissible* evidence of the defendant's guilt would be insufficient to warrant submission of the case to a jury if it had gone to trial, the rules of evidence at the preliminary hearing should in general be the same rules that are applicable at the criminal trial. See Smith, Mass. Practice, Vol. 30, Criminal Practice and Procedure, § 688. "The probable cause hearing is conducted in the same manner as any other trial in the District Court." Unlike a finding of probable cause for arrest which can be based solely on reliable hearsay testimony, probable cause to hold the defendant for trial must be based on competent testimony which would be admissible at trial. Compare Federal Rule 5.1 Preliminary Examination, 56 FRD 143. If it appears that added exceptions to the hearsay rule are desirable to insure an effective probable cause hearing, specific rules may be developed as was done in *O'Coin's Inc.* v. *Treasurer of the County of Worcester,* 362 Mass. 507, 516.

evidence to warrant a jury's finding the accused guilty."
Goldstein, The State and the Accused: Balance of Advantage in Criminal Procedure, 69 Yale L. J. 1149, 1166.

Since the examining magistrate's determination of the
minimum quantum of evidence required to find probable
cause to bind over is somewhat analogous in function to
the court's ruling on a motion for a directed verdict at
trial as to whether there is sufficient evidence to warrant submission of the case to the jury, we have decided
to adopt a "directed verdict" rule in defining the
minimum quantum of credible evidence necessary to support a bind-over determination.[7]   The examining magistrate should view the case as if it were a trial and he
were required to rule on whether there is enough credible
evidence to send the case to the jury.   Thus, the magistrate should dismiss the complaint when, on the evidence
presented, a trial court would be bound to acquit as a
matter of law.   *People* v. *Bernstein*, 95 N. Y. S. 2d 696,
699 (N. Y. C. Magis. Ct. 1950).   The minimum quantum
of evidence required by this bind-over standard is more
than that for probable cause for arrest but less than
would "prove the defendant's guilt beyond a reasonable
doubt."   *People* v. *Bieber*, 100 N. Y. S. 2d 821, 823 (N.
Y. C. Magis. Ct.).   See also *Commonwealth* v. *Baron*, 356
Mass. 362, 365–366.

3. We must construe G. L. c. 276, § 38, in a manner
which effectuates its primary purpose of screening out
"an erroneous or improper prosecution," *Coleman* v.
*Alabama*, 399 U. S. at 9, promotes its ancillary functions
noted in both the *Coleman* case and *Commonwealth* v.
*Britt*, 362 Mass. 325, and avoids any serious question of

---

[7] According to a recent study sponsored by the American Bar Association, this "directed verdict" definition of probable cause is the most
common screening standard practised in other States which have
probable cause hearings.   See F. Miller, Prosecution: The Decision to
Charge a Suspect With Crime (ABA study).   See also Graham &
Letwin, The Preliminary Hearing in Los Angeles, 18 U.C.L.A. Law
Rev. 636 and American Law Institute, A Model Code of Pre-Arraignment Procedure (Tent. Draft No. 5) § 330.5 (3) (Model Code).
"[Probable] cause to hold the defendant for trial exists . . . when the
evidence introduced at the preliminary hearing would support a guilty
verdict."

constitutional infirmities. The Commonwealth's interpretation of the statute fails in each of these three respects.

The Commonwealth argues that once a prima facie showing of probable cause has been made by prosecution testimony, the examining magistrate can end the hearing before the defendant's attorney has had an opportunity to make a complete cross-examination of the prosecution witness or to present an affirmative defence. We fail to see how such a limited procedure could possibly effectuate the hearing's primary function of screening out cases that should not go to trial. To require such minimal proof of probable cause would render the hearing, in many instances, an empty ritual with a foregone conclusion. If the examining magistrate could simply rest his finding of probable cause on the ipse dixit of the prosecution, there would be little need for defence counsel's presence, let alone the defendant's.

Construing statutory provisions similar to G. L. c. 276, § 38, the California Supreme Court expressly rejected the position taken by the Commonwealth in the instant case that the defendant's statutory right to confront his accusers and present testimony on his own behalf [8] may be precluded by the prosecutor's prima facie showing of probable cause. The court noted that if it accepted the State's argument, ". . . any cross-examination or testimony on behalf of the defendant would become superfluous. To accept the People's argument would be in effect to erase sections 865 and 866 from the books and reduce the preliminary hearing to an ex parte proceeding at which the defendant's presence would be a meaningless gesture. . . ." *Jennings* v. *Superior Court of Contra Costa County,* 66 Cal. 2d 867, 880. We agree.

The primary function of the probable cause hearing of

[8] California's Penal Code, § 865, provides that at preliminary hearings "[t]he witness must be examined in the presence of the defendant and may be cross-examined in his behalf," and § 866 provides, "When the examination of the witness on the part of the people is closed, any witnesses the defendant may produce, must be sworn and examined."

screening out "an erroneous or improper prosecution," *Coleman* v. *Alabama,* 399 U. S., *supra,* at 9, can only be effectuated by an adversary hearing where the defendant is given a meaningful opportunity to challenge the credibility of the prosecution's witnesses and to raise any affirmative defences he may have.   As Chief Justice Holmes noted in *Commonwealth* v. *Goldstein,* 180 Mass. 374, 376, "It certainly might be thought likely that if a plain man . . . were charged with such a crime and knew that several persons could prove that he was at home at the time, he would say so and would make some effort to produce them.   Whatever the nature of the [probable cause] proceedings, they give the defendant an opportunity to get rid of further trouble. . . ." [9]

The facts of the instant case provide an excellent illustration of this point.   The only witness at the petitioner's probable cause hearing was the complaining witness who repeated her accusation that the petitioner had raped her. If the petitioner had been afforded his statutory rights, he would have introduced testimony challenging the complaining witness's credibility and supporting his defence of a consensual sexual relationship.[10]   The examining magistrate could not have possibly made an informed judgment on the question whether there was sufficient credible evidence of the defendant's guilt to support a bind over until he had considered all of this evidence.[11]

---

[9] The court held in *Commonwealth* v. *Goldstein, supra,* that a defendant's *failure* to present witnesses in his behalf at the probable cause hearing could properly be brought to the jury's attention at the defendant's trial.   But see St. 1912, c. 325 (now G. L. c. 278, § 23), which prohibits a prosecutor from bringing to the jury's attention the fact that a defendant did not exercise his right to present any witnesses in his behalf at the probable cause hearing.

[10] If permitted, the petitioner's counsel would have introduced in evidence a psychiatric evaluation of the prosecutrix which noted that she "has a hysterical neurosis, a condition in which people might make up stories and then half believe them themselves.   I would question the veracity of her statements."   Defence counsel also wished to introduce a "medical report on the prosecutrix which shows that she received no abdominal injury, no pelvic trauma and that a vaginal discharge test for spermatozoa performed by a physician at the Boston City Hospital the morning of the alleged rape indicated no spermatozoa."

[11] General Laws c. 276, § 41, requires the examining magistrate to discharge the prisoner from custody "[i]f it appears, *upon the whole*

In some cases, the evidence introduced in behalf of the defendant will do no more than raise a conflict which can best be resolved by a jury at the actual trial where the Commonwealth must prove the defendant's guilt beyond a reasonable doubt. But, in other cases, the evidence elicited by defense counsel on cross-examination or from the testimony of defence witnesses or from other evidence may lead the examining magistrate to disbelieve the prosecution's witnesses and discharge the defendant for lack of probable cause.[12]

"The credibility of witnesses at the preliminary hearing is, of course, a question of fact within the province of the committing magistrate to determine." *Rideout* v. *Superior Court of Santa Clara County*, 67 Cal. 2d 471, 473, n. 2. "The magistrate is not bound to believe even the uncontradicted testimony of a particular witness, especially where the statements are self-serving and the magistrate has reason to believe that other testimony of the witness is untruthful." *De Mond* v. *Superior Court of Los Angeles County*, 57 Cal. 2d 340, 345. *Jennings* v. *Superior Court of Contra Costa County*, 66 Cal. 2d 867, *supra*. *Jones* v. *Superior Court of San Bernardino County*, 4 Cal. 3d 660, 667. *State ex rel. Tessler* v. *Kubiak*, 42 N. W. 2d 496 (Wis. Supr. Ct.). *Commonwealth* v. *Rice*, 216 Mass. 480, 481–482. See also Model Code, § 330.5 (3). (". . . In determining whether . . . [probable] cause exists, the judge may consider the credibility of the witnesses and the quality of the evidence introduced.") Regardless of whether the petitioner's evidence in the instant case would have been sufficient to overcome the prosecution's case for probable cause, he

---

*examination,* that no crime has been committed or that there is not probable cause for charging the prisoner therewith . . ." (emphasis supplied).

[12] "[T]he judicial role in pretrial screening involves weighing and judgment rather than a wooden comparison of the testimony with the elements of the crime. Although credibility ordinarily is a matter for the jury, and it is not expected that judges will normally resolve testimonial conflicts at the preliminary hearing, cases do occasionally arise in which a witness's testimony is so weak or contradicted by sufficiently clear facts that the judge should have the power to dismiss the case." Model Code p. 91.

had a statutory right to have the judge consider it before making his decision.

4. In view of our interpretation of the statute, c. 276, § 38, we need not decide the petitioner's contention that the due process requirements of the United States Constitution mandate that the defendant in a probable cause hearing shall have the right to cross-examine prosecution witnesses and present testimony in his own defence. See *Grannis* v. *Ordean*, 234 U. S. 385; *Armstrong* v. *Manzo*, 380 U. S. 545; *Goldberg* v. *Kelly*, 397 U. S. 254.

However, in construing legislative enactments, we must "take care to interpret them so as to avoid a danger of unconstitutionality." *United States* v. *Congress of Industrial Organizations*, 335 U. S. 106, 120–121. The Commonwealth's interpretation of c. 276, § 38, fails to avoid this "danger" because it permits a summary determination of probable cause that would be subject to serious challenge on constitutional grounds. The Fourteenth Amendment provides that no State shall deprive any person of life, liberty, or property without due process of law. "The fundamental requisite of due process of law is the opportunity to be heard." *Grannis* v. *Ordean*, 234 U. S. 385, 394. It is an opportunity which must be granted "at a meaningful time and in a meaningful manner." *Armstrong* v. *Manzo*, 380 U. S. 545, 552. At the very least, due process of the law requires that "deprivation of life, liberty or property by adjudication be preceded by notice and *opportunity for a hearing appropriate to the nature of the case*" (emphasis supplied). *Mullane* v. *Central Hanover Bank & Trust Co.* 339 U. S. 306, 313.

In *Goldberg* v. *Kelly*, 397 U. S. 254, the court formulated the test for providing procedural due process as follows: "The extent to which procedural due process must be afforded . . . is influenced by the extent to which he may be 'condemned to suffer grievous loss,' . . . [citation omitted], and depends upon whether the . . . [individual's] interest in avoiding that loss outweighs the governmental interest in summary adjudication." Pp.

262–263. Applying this test to the case before it, the court held that there must be an initial hearing before welfare payments to an individual can be terminated, even though a subsequent hearing is afforded. See also *Sniadach* v. *Family Fin. Corp.* 395 U. S. 337 (opportunity to be heard is required before garnishment of wages); *Bell* v. *Burson*, 402 U. S. 535 (opportunity to be heard is required before a driver's license can be suspended).

The court declared that fundamental principles of due process require that the welfare recipient be given "an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally." *Goldberg* v. *Kelly, supra*, p. 268. The court noted that whenever important factual disputes were involved, these two procedural rights of confrontation and presentation of testimony must always be granted to insure that the hearing would be "appropriate to the nature of the case." The *Mullane* case, *supra*, at 313. Therefore, we must reject the Commonwealth's interpretation of c. 276, § 38, because it would permit a summary determination of probable cause which would not only frustrate the statute's primary purpose of screening out "an erroneous or improper prosecution," *Coleman* v. *Alabama*, 399 U. S. at 9, but would also raise serious questions as to the statute's constitutionality.[13]

Our analysis of the purposes (and procedure) of the probable cause hearing leads us to conclude that the defendant must be given the opportunity to cross-

---

[13] Moreover, the Commonwealth's interpretation would permit a procedure that would be subject to serious challenge on equal protection grounds. Past experience indicates that most District Court judges permit defendants (if they so desire) to present testimony in their own behalf at probable cause hearings. The Commonwealth's interpretation of the statute, which gives defendants a right to do so only at the trial court's discretion, would create a situation where some defendants would be afforded a full adversary hearing upon demand while others received summary hearings in which probable cause findings rested on the unchallenged ipse dixit of prosecution witnesses. Certainly, such a discrepancy in the type of probable cause hearing afforded defendants similarly situated would raise a serious constitutional question as to whether those defendants, who received summary hearings, were being denied the equal protection of the law.

examine his accusers and present testimony in his own behalf in order to insure that the hearing's vital screening function will be effectuated. Therefore, we hold that c. 276, § 38, grants defendants mandatory statutory rights to cross-examine prosecution witnesses and present testimony in their own behalf *before* the examining magistrate determines whether there is sufficient legally admissible evidence of the defendant's guilt to justify binding him over for trial.[14]

5. The Commonwealth argues in its brief (however, see fn. 15) that granting defendants inflexible statutory rights to cross-examine witnesses against them and to present testimony in their own behalf would transform the preliminary hearing into a full-blown trial with disastrous results to a criminal justice system that is already overburdened. However, past experience indicates that trial strategy usually prevents such a result as both the prosecution and the defence wish to withhold as much of their case as possible.

"[N]ormally defense counsel will be more concerned at the preliminary with exploring rather than destroying the prosecution's case. If they were aware of the defects in testimony capable of attack on cross-examination, most lawyers would prefer to save the attack for trial rather than tip their hand at this early stage."[15] Graham & Letwin, 18 U.C.L.A. Law Rev. 916, 926. For the same reasons, defence tactics usually mitigate against putting the defendant on the stand or presenting exculpatory testimony at the preliminary hearing (see A.B.A. Study at p. 76) unless defence counsel believes his evidence is com-

---

[14] For reasons similar to those stated by the United States Supreme Court in *Adams* v. *Illinois,* 405 U. S. 278 (which held that *Coleman* v. *Alabama* would not be given retroactive effect), the new guidelines for conducting probable cause hearings announced in this opinion will apply to all preliminary hearings held after the date of this decision.

[15] Counsel for the Commonwealth conceded in oral argument that in most cases the defendant would not take advantage of his statutory right to present testimony in his behalf for the tactical reasons noted above.

pelling enough to overcome the prosecution's case.[16]

In those instances where the defendant does choose to exercise his statutory rights, the examining magistrate at the hearing has the same broad discretion as a trial judge in limiting the scope of cross-examination to relevant issues in dispute. See *Commonwealth* v. *Makarewicz*, 333 Mass. 575, 593 ("The limits of cross-examination rest largely in the sound discretion of the trial judge"); *Commonwealth* v. *Palladino*, 346 Mass. 720, 723. However, the judge at a preliminary hearing should allow reasonable latitude to the scope of the defendant's cross-examination of prosecution witnesses in order to effectuate the ancillary discovery and impeachment functions of the hearing noted in the *Coleman* and *Britt* cases, *supra*. "Not [in] every instance in which a cross-examiner's question is disallowed will defendant's right to a fair hearing be abridged, since the matter may be too unimportant [citation omitted], or there may be no prejudice [citation omitted] or the question may involve issues which can be brought up at a more appropriate time [citation omitted]. However, where the subject of cross-examination concerns the matter at issue there can be no doubt that the refusal to permit such question results in a denial of a fair hearing [citations omitted]." *Jennings* v. *Superior Court of Contra Costa County*, 66 Cal. 2d 867, 879.

Since the summary manner in which the petitioner's probable cause hearing was conducted denied the petitioner his statutory right to cross-examine witnesses and present evidence before the issue of probable cause was determined, the petitioner must be given a new preliminary hearing to determine whether there is probable cause to hold him on the charges pending against him. Therefore, pursuant to our powers of "general superin-

---

[16] Even in this situation, defence counsel may choose not to offer such evidence because a District Court's decision "that there is no probable cause does not preclude further prosecution." *Commonwealth* v. *Britt*, 362 Mass. 325, 330.

tendence of all courts of inferior jurisdiction," c. 211, § 3, the original probable cause finding is vacated and the case is remanded to the Municipal Court of the Roxbury District for a new preliminary hearing to be conducted in accordance with the requirements of c. 276, § 38.

*So ordered.*

QUIRICO, J. (concurring in the result). I concur with the result reached in the opinion of the court. In my opinion the result is required by the clear and express language of G. L. c. 276, § 38, which entitles the petitioner to a hearing at the District Court level at which he is entitled to cross-examine the witnesses for the prosecution and to examine his own witnesses, and to have the assistance of counsel in so doing. I do not believe the statute can be interpreted in any other way, and therefore I do not believe it is necessary to consider whether the statute would violate the due process clause of the Fourteenth Amendment of the United States Constitution if it were interpreted in any other way. I recognize that the discussion of this subject in the court's opinion is dictum, but I fear that it may be misconstrued as a suggestion of unconstitutionality of historic investigative and accusatory proceedings, such as those before a grand jury, in which the ultimate defendant is not permitted to participate.