COMMONWEALTH *vs.* CHRISTOPHER J. REESE.

Plymouth. October 8, 2002. - January 23, 2003.

Present: MARSHALL, C.J., GREANEY, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Sex Offender. Practice, Civil,* Sex offender. *Evidence,* Sex offender, Expert opinion, Credibility of witness, Learned treatise.

Statement of the standard to be applied by a judge to the evidence at a hearing pursuant to G. L. c. 123A, § 12 (*c*), to determine whether the person named in a petition by the Commonwealth to commit the person as sexually dangerous pursuant to G. L. c. 123A, § 12 (*b*), is a sexually dangerous person. [521-525]

This court vacated a Superior Court judge's finding of no probable cause to believe that the defendant was a sexually dangerous person as defined in G. L. c. 123A, § 1, where the testimony of the Commonwealth's expert that the defendant suffered from the mental abnormality of pedophilia, which the judge found not to be credible, was not so incredible, insubstantial, or otherwise of such a quality that no reasonable person could rely on it. [525-526]

At a hearing pursuant to G. L. c. 123A, § 12 (*c*), to determine whether the defendant was a sexually dangerous person, the judge erred in concluding that the Commonwealth had not adequately established that the defendant was "likely" to engage in sexual offenses if not confined to a secure facility, where the articles on which the judge based his conclusion had not been established as reliable or authoritative, contained inadmissible hearsay, and did not satisfy any of the exceptions to the hearsay rule, and where the term "likely," as interpreted by this court in *Commonwealth* v. *Boucher, ante* 274 (2002), did not include the requirement that the Commonwealth prove that the defendant was "more likely than not" to commit additional sexual offenses if not confined. [526-528]

PETITION for civil commitment filed in the Superior Court Department on February 14, 2001.

A hearing on the issue of probable cause to classify the defendant as sexually dangerous was had before *Ralph D. Gants,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Robert C. Thompson,* Assistant District Attorney, for the Commonwealth.

*David H. Erickson*, for the defendant, submitted a brief.

*Martha Coakley*, District Attorney, *& Lillian Cheng*, Assistant District Attorney, for the District Attorney for the Middlesex District, amicus curiae, submitted a brief.

CORDY, J. The Commonwealth appeals from a Superior Court judge's finding of no probable cause to believe that Christopher J. Reese was a sexually dangerous person as defined in G. L. c. 123A, § 1. The judge based his finding of no probable cause on subsidiary findings that the testimony of the Commonwealth's expert that Reese (1) was a pedophile; (2) suffered from a "personality disorder"; and (3) was likely to commit additional sexual offenses if not confined to a secure facility, was not credible. Therefore, he concluded that the Commonwealth had not met its burden of establishing that "a reasonable trier of fact could find the defendant beyond a reasonable doubt to be a sexually dangerous person based on . . . credible evidence." We conclude that the judge misapplied the applicable standard of proof to the evidence adduced at the probable cause proceeding, relied on hearsay evidence improperly admitted in evidence over the Commonwealth's objection, and misinterpreted the requirement that the defendant be "likely" to engage in sexual offenses if not confined to a secure facility. Consequently, we vacate the judge's finding of no probable cause and remand the matter to the Superior Court for a new hearing.

1. *Background.* On June 24, 1998, Reese pleaded guilty to two counts of indecent assault and battery on a child and one count of assault with intent to rape a child. The gravamen of these offenses was a series of sexual assaults on an eight year old boy and a ten year old girl occurring during the six-week period from June 15, 1997, to July 31, 1997, while Reese lived in the home of one of the victims and babysat for the other. Reese was approximately thirty years old at the time of the offenses and had been homeless prior to being invited to live with the family of the male victim. He was arrested on August 1, 1997, and remained incarcerated until his plea of guilty. He was sentenced to a total of four years in a house of correction to be followed by five years of probation, with special conditions including sex offender treatment, alcohol and drug treatment for an apparently life-long substance abuse problem, and no contact with either the victim or other minors under the age of sixteen.

On February 14, 2001, while Reese was serving his sentence, the Commonwealth filed a petition in the Superior Court that Reese be civilly committed as a sexually dangerous person pursuant to G. L. c. 123A, § 12 (*a*).[1] The Commonwealth secured Reese's temporary detention pending a probable cause hearing, which was held on March 26 and 28, 2001.[2] On April 5, 2001, the hearing judge found no probable cause to believe that Reese was a sexually dangerous person as defined in G. L. c. 123A, § 1. Because Reese had completed his term of imprisonment as of that date, and was being held in custody solely on the basis of the Commonwealth's petition for civil commitment, the judge ordered Reese's immediate release from custody, subject to the terms of his conditional probation. The release order was not stayed and the Commonwealth appealed. We granted its application for direct appellate review.

2. *Discussion.*

a. *The probable cause standard.* Following a petition by the Commonwealth to commit a person as sexually dangerous pursuant to G. L. c. 123A, § 12 (*b*), a judge is required to hold a hearing to determine whether "probable cause exists to believe that the person named in the petition is a sexually dangerous person." G. L. c. 123A, § 12 (*c*). At the § 12 (*c*) hearing, the subject of the petition has the right to be represented by counsel, to present evidence, and to cross-examine the Commonwealth's witnesses. G. L. c. 123A, § 12 (*d*). If probable cause is found, the person is committed to the treatment center for sixty days during which time he is to be examined by two "qualified examiners,"[3] who must file with the court a written report of their examination, diagnosis, and recommendation no later than

---

[1]In relevant part, a sexually dangerous person is defined in G. L. c. 123A, § 1, as any person "who has been . . . convicted of . . . a sexual offense and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in sexual offenses if not confined to a secure facility."

[2]The Commonwealth's petition was filed approximately six weeks before Reese was to be released from his sentence of incarceration. As that date drew near, the Commonwealth successfully sought to have him detained pending the outcome of the probable cause hearing pursuant to G. L. c. 123A, § 12 (*e*).

[3]A "[q]ualified examiner" is defined in G. L. c. 123A, § 1, as "a physician who is licensed pursuant to section two of chapter one hundred and twelve

fifteen days prior to the expiration of the sixty-day period. G. L. c. 123A, § 13 (*a*). Following the filing of this report, the district attorney has fourteen days within which to petition the court for a trial on the question whether the person is sexually dangerous. G. L. c. 123A, § 14 (*a*). If a petition for trial is filed, the trial must be held within sixty days, absent a continuance for good cause or in the interests of justice. *Id.* The reports of the qualified examiners are admissible at trial. G. L. c. 123A, § 14 (*c*).

The first question we address is the standard to be applied by the judge to the evidence at the § 12 (*c*) hearing. In *Commonwealth* v. *Bruno*, 432 Mass. 489, 510 (2000), we noted that "[t]he § 12 (*c*) . . . hearing is more like [a] bind-over hearing, with its formal requirements and adversary nature" than an ex parte grand jury proceeding.[4] Consequently, we concluded that the "directed verdict" standard appropriate to a bind-over hearing was "appropriate to this type of proceeding," not the "probable cause to arrest" standard applicable to a grand jury proceeding. *Id.* The "directed verdict" standard used in a bind-over hearing, as articulated in *Myers* v. *Commonwealth*, 363 Mass. 843, 850 (1973), is "whether there is enough credible

---

who is either certified in psychiatry by the American Board of Psychiatry and Neurology or eligible to be so certified, or a psychologist who is licensed pursuant to sections one hundred and eighteen to one hundred and twenty-nine, inclusive, of chapter one hundred and twelve; provided, however, that the examiner has had two years of experience with diagnosis or treatment of sexually aggressive offenders and is designated by the commissioner of correction. A 'qualified examiner' need not be an employee of the department of correction or of any facility or institution of the department."

[4] A bind-over hearing is held pursuant to G. L. c. 218, § 30: "[The District Court] shall commit or bind over for trial in the superior court persons brought before them who appear to be guilty of crimes not within their final jurisdiction, and may so commit or bind over persons brought before them who appear to be guilty of crimes within their final jurisdiction." Bind-over hearings are subject to the procedural requirements of G. L. c. 276, § 38: "The court or justice before whom a person is taken upon a charge of crime shall, as soon as may be, examine on oath the complainant and the witnesses for the prosecution, in the presence of the defendant, relative to any material matter connected with such charge. After the testimony to support the prosecution, the witnesses for the prisoner, if any, shall be examined on oath, and he may be assisted by counsel in such examination and in the cross examination of the witnesses in support of the prosecution."

evidence to send the case to the jury."[5] *Id.* "What this unavoidably entails for the hearing judge is that she make some assessment of the credibility of the evidence that is presented when making the determination as to whether sufficient evidence has been presented to warrant further proceedings." *Commonwealth* v. *Blanchette*, 54 Mass. App. Ct. 165, 173 (2002). This, however, "is an exercise requiring a very deft touch and considerable restraint on the part of the judge," *id.*, recognizing that credibility determinations are to be left to the ultimate trier of fact except in cases "in which a witness's testimony is so weak or contradicted by sufficiently clear facts that the judge should have the power to dismiss the case." *Myers* v. *Commonwealth, supra* at 853 n.12.

While the bind-over hearing may be the analogue to the § 12 (*c*) hearing, it is not its twin. Although they share a similar primary function, to screen out nonmeritorious criminal cases and petitions for commitment, the consequences of a probable cause finding in each context are different. If probable cause is found in a bind-over hearing, the criminal charges proceed to trial and the individual is held for trial on terms of release or in lieu of bail. If probable cause is found in a § 12 (*c*) hearing, the individual is transferred from his place of incarceration to the treatment center for expert examination and evaluation. Depending on the outcome of that examination, the district attorney may or may not petition the court for a trial on the merits, but must do so within fourteen days of the filing of the examination report with the court.

Perhaps the most important difference between the bind-over and § 12 (*c*) proceedings is the quality of the evidence available to the judge. Unlike at a bind-over hearing, where the Commonwealth is presumably in a position to present at least its most important evidence of guilt (evidence that it will again present at the criminal trial), the necessary and critical expert evidence of sexual dangerousness that will be offered at a trial

[5]As has been noted in decisions since *Myers* v. *Commonwealth*, 363 Mass. 843 (1973), the bind-over directed verdict standard requires some assessment of credibility. Credibility generally plays no role in the analogous, but not identical, directed verdict decision at trial where the evidence is to be viewed in the light most favorable to the nonmoving party. See, e.g., *Commonwealth* v. *Blanchette*, 54 Mass. App. Ct. 165, 173 n.8 (2002), and cases cited.

on a petition for commitment under G. L. c. 123A is largely unavailable at the time of the § 12 (*c*) hearing. That evidence will be the product of the § 13 (*a*) examination that occurs only after a finding of probable cause is made at the § 12 (*c*) hearing.[6] Consequently, the hearing judge, in assessing the credibility of expert witnesses who will not yet have access to the most important sources of information in the case at the time they are called to testify, must act with even more restraint than a judge assessing the credibility of Commonwealth witnesses in the context of a bind-over hearing.

Considering the function of the § 12 (*c*) hearing and the constraints on the evidence that will be available at the time it is to occur, as well as the substantial public safety and liberty interests at stake, we approve the formulation adopted by the Appeals Court in *Commonwealth* v. *Blanchette, supra* at 175, regarding the implementation of the "directed verdict" standard in the context of the § 12 (*c*) hearing. Specifically, the decision-making process ought to consist of a two-part inquiry, one quantitative and the other qualitative. "The judge must be satisfied, first, that the Commonwealth's admissible evidence, if believed, satisfie[s] all of the elements of proof necessary to prove the Commonwealth's case. Second, she must be satisfied that the evidence on each of the elements is not so incredible, insubstantial, or otherwise of such a quality that no reasonable person could rely on it to conclude that the Commonwealth had met its burden of proof." *Id.* In conducting the second part of

---

[6]Once a finding of probable cause has been made and qualified examiners appointed, G. L. c. 123A, § 13 (*b*), requires that the examiners be provided with a wealth of important materials to assist them in their examination and diagnosis: "The court shall supply to the qualified examiners copies of any juvenile and adult court records which shall contain, if available, a history of previous juvenile and adult offenses, previous psychiatric and psychological examinations and such other information as may be pertinent or helpful to the examiners in making the diagnosis and recommendation. The district attorney or the attorney general shall provide a narrative or police reports for each sexual offense conviction or adjudication as well as any psychiatric, psychological, medical or social worker records of the person named in the petition in the district attorney's or the attorney general's possession. The agency with jurisdiction over the person named in the petition shall provide such examiners with copies of any incident reports arising out of the person's incarceration or custody." See *Commonwealth* v. *Markvart*, 437 Mass. 331 (2002).

this assessment, the judge is to determine whether the evidence presented is of suitable quality to allow the action to proceed further along a course that was legislatively designed next to include a full expert examination of the subject. *Id.*

Applying this standard to the judge's findings in this case requires vacating his finding of no probable cause. For example, the judge found the testimony of the Commonwealth's expert, Dr. William B. Land (whose credentials as an expert witness were not challenged by the defendant), that Reese suffered from the mental abnormality of pedophilia, not to be credible because the evidence on which that opinion relied did not meet one of the "features" of the diagnosis set forth in the Diagnostic and Statistical Manual of Mental Disorders (rev. 4th ed. 2000), by the American Psychiatric Association (commonly referred to as DSM-IV).[7] Specifically, the judge concluded that because one of the diagnostic criteria of pedophilia set forth in the DSM-IV is, inter alia, sexually arousing fantasies, sexual urges, or behaviors involving sexual activities with a prepubescent child *over a period of at least six months*; and because the expert only had evidence of such sexual activity occurring during the six-week period before Reese was arrested, the diagnosis of pedophilia was "so incredible that no reasonable factfinder could accept it." In reaching this conclusion, the judge rejected Dr. Land's explanation that the DSM-IV is only a diagnostic tool that does not always completely and accurately describe every clinical situation encountered in the field, and is to be used in conjunction with the expert's clinical experience with similar patients and behaviors. He also rejected Dr. Land's opinion that six weeks of the admitted sexual misbehavior, when combined with the presence of other criteria indicative of pedophilia, was an adequate basis from which a diagnosis of pedophilia could be made.[8]

In ruling that the expert's testimony was "incredible," the

[7]The Diagnostic and Statistical Manual of Mental Disorders (rev. 4th ed. 2000) was not admitted in evidence, and the questions regarding it came principally from the judge.

[8]The expert did not note that whether Reese had had sexual fantasies about children before June 15, 1997, or had acted out on those fantasies, might not be known until a full examination and evaluation of Reese had taken place, and, further, that there was no reason to believe that the behavior would not have

judge couched his findings in terms of any reasonable fact finder, that is, he concluded that "no reasonable factfinder could accept [Dr. Land's diagnosis that Reese was a pedophile]." It is, however, apparent from the record that the ruling is an expression of the judge's personal conclusion regarding the expert's credibility, based on his own opinion of the proper application of the DSM-IV, and the significance of the differences between Dr. Land's testimony and the DSM-IV text. This was error. The testimony of the expert is not "so incredible, insubstantial, or otherwise of such a quality that no reasonable person could rely on it." *Commonwealth* v. *Blanchette, supra* at 175.[9]

. b. *Likelihood of committing additional sexual offenses.* In addition to finding that the Commonwealth had failed to satisfy its burden of establishing probable cause to believe that Reese suffered from either a mental abnormality or a personality disorder, the judge also concluded that it had not adequately established that Reese was "likely to engage in sexual offenses if not confined to a secure facility." The judge based this conclusion both on his assessment of the credibility of Dr. Land's testimony that Reese would "likely" commit such an offense, and on his legal conclusion that "likely to engage in sexual offenses" means that "there is a substantial likelihood, at least more likely than not, that the respondent will commit a new sexual offense within the immediate future, understood generally to be within the next five years but with a longer time horizon if the anticipated harm is extremely serious."

The judge's rejection of Dr. Land's testimony that Reese was likely to commit sexual offenses, and his formulation of the meaning of the statutory requirement that a person be "likely to engage in sexual offenses," were, in turn, based largely on his conclusion that articles authored by Dr. R. Karl Hanson on

continued past July 31, 1997, if it had not been interrupted by his arrest. The fact that aberrant behavior is abbreviated by law enforcement before it has run its full course can hardly be said to affect the underlying mental condition causing it.

[9]The same analysis could be made with regard to the judge's assessment of Dr. Land's credibility regarding his expert opinion that Reese also suffered from an antisocial personality disorder. We need not address this, however, because either diagnosis is adequate to satisfy the definitional requirements of a sexually dangerous person in G. L. c. 123A, § 1.

sexual recidivism and studies of sexual recidivism were more reliable than Dr. Land's testimony and more legally authoritative. These articles were offered in evidence by Reese's counsel at the judge's urging during the §· 12 (*c*) hearing.[10] Their admission was objected to by the Commonwealth and was error. The articles were never established as reliable or authoritative, contain nothing but inadmissible hearsay, and do not satisfy any of the exceptions to the hearsay rule. They do not fall within the "learned treatises" exception as set forth in Proposed Mass. R. Evid. 803 (18), because that rule only allows statements in treatises or periodicals that have been established as reliable authorities to be read in evidence on cross-examination of an expert, and does not permit their admission as exhibits. *Brusard* v. *O'Toole*, 429 Mass. 597, 601 (1999). *Commonwealth* v. *Sneed*, 413 Mass. 387, 395-396 (1992). Similarly, the articles are not admissible as "learned treatises" under G. L. c. 233, § 79C, which only provides for the admission of treatises or periodicals "in actions of contract or tort for malpractice, error or mistake against physicians, surgeons, dentists, optometrists, hospitals and sanitaria," where the author of the treatise is established as an expert on the subject. Finally, they are not admissible under G. L. c. 123A, § 14 (*c*), which authorizes the admission in evidence at the commitment *trial* "any other evidence tending to show that such person is or is not a sexually dangerous person." This exception by its terms applies only to the admissibility of evidence at trial, and authorizes the admission only of evidence that is independently admissible under the rules of evidence. See *Commonwealth* v. *Rodriguez*, 376 Mass. 632, 638 (1978), citing *Commonwealth* v. *Bladsa*, 362 Mass. 539, 541 (1972).

Finally, as to the meaning of the term "likely," the judge did not have the benefit of our recent decision in *Commonwealth* v. *Boucher, ante* 274 (2002), interpreting that term as it is used in

---

[10]The articles are Hanson, What Do We Know About Sex Offender Risk Assessment?, 4 Psychol., Pub. Pol'y and L. 50-72; Hanson, Predictors of Sexual Offender Recidivism: A Meta-Analysis (User Report No. 96-04), Ottawa, Ontario: Department of the Solicitor General of Canada (1996); Hanson, Static 99: Improving Actuarial Risk Assessments for Sex Offenders" (User Report No. 99-02) Ottawa, Ontario: Department of the Solicitor General of Canada (1999); and Phenix, Coding Rules for the Static 99.

G. L. c. 123A. The meaning that we have ascribed to it does not include the requirement that the Commonwealth prove that the respondent is "more likely than not" to commit additional sexual offenses if not confined.

3. *Conclusion.*

For the foregoing reasons, we vacate the finding of no probable cause and remand the case for a new probable cause hearing.

*So ordered.*