Agnes, A.J.
1. Introduction. This is a civil action in which the Commonwealth filed a petition that the defendant, Steven Delisle, be civilly committed as a sexually dangerous person pursuant to G.L.c. 123A, § 12(a). The defendant was convicted of multiple counts of aggravated rape of a child in 1989 and sentenced to a 9-15 year term of imprisonment in state prison. The offense consisted of the late-night attack on and kidnapping of a 14-year-old female after she became separated from her friends, and repeated acts of sexual intercourse and abuse throughout the night. The defendant tied up the victim, led her around on a leash, performed acts of sexual intercourse on her and inserted objects into her vagina. The matter is before the court for a probable cause hearing under G.L.c. 123A, §12(c). The court heard testimony from Dr. Katrin Rouse-Weir, a licensed, designated forensic psychologist in Massachusetts and a “qualified examiner” under G.L.c. 123A (curriculum vitae in evidence as exhibit 10), and Dr. Eric L. Brown, a licensed forensic psychologist and qualified examiner in Massachusetts (curriculum vitae in evidence as exhibit 11).
2. Defendants Motion in Limine Regarding Expert Witness Testimony. The defendant has filed a motion in limine in which he maintains that recent decisions regarding the role of the court in screening certain types of expert witness testimony to insure that it meets minimum standards of scientific or technical reliability, Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), and Commonwealth v. Lanigan, 419 Mass. 15 (1994), should be applied to bar expert psychological testimony concerning a person’s future dangerousness. See paragraph (4) infra. Proceedings concerning sexually dangerous persons are governed by G.L.c. 123A. However, as noted in paragraph (5) below, the Commonwealth is not required to prove that a person is more likely than not to commit another sexual offense in the future in order to prove that the individual is a sexually dangerous person. Commonwealth v. Boucher, 438 Mass. 274, 277 (2002). Instead, the concept of “likely to engage in sexual offenses” is described as one characteristic of an SDP. Thus, it is not accurate to say that psychiatric testimony in such cases is of dubious reliability because psychiatrists and psychologists cannot predict future behavior. Moreover, Under G.L.c. 123A, §14(c), the legislature has specifically provided that the reports and testimony of qualified examiners are admissible in these proceedings. That judgment must be respected absent a showing that it is utterly without a reasonable foundation or specifically contravenes a constitutional provision. See Commonwealth v. McGruder, 348 Mass. 712, 715 (1965) (court must respect policy of the Legislature with respect to the trustworthiness of psychiatric opinion evidence in cases involving sexually dangerous persons). See also In re Melton, 597 A.2d 892, 899-900 (D.C.App. 1991). In fact, the entire edifice of the current statute, G.L.c. 123A, rests *528 on the presumed admissibility of expert testimony from qualified psychiatrists and psychologists without which the Commonwealth cannot not meet its burden of proof. See Commonwealth v. Bruno, 432 Mass. 489, 513 (2000) (necessity of expert witness testimony at probable cause stage); Commonwealth v. Dube, 59 Mass.App.Ct. 476, 482 (2003) (necessity of expert witness testimony at trial).
3. One result that does not follow from the decisions in Daubert v. Merrell Dow Pharmaceuticals, Inc., supra, and Commonwealth v. Lanigan, supra, is that every opinion by an expert witness that is based on a scientific theory or some other area of technical or specialized knowledge must be reassessed by the trial judge and found to be reliable before admitted at a hearing or at trial. “In the absence of specific, concrete evidence suggesting unreliability, Lanigan should not be used to revisit areas where we have validated expert testimony based on properly conducted personal observations and clinical testing applying generally accepted scientific techniques.” Canavan’s Case, 432 Mass. 304, 317 (Greaney, J., concurring). Testimony of the sort given in SDP proceedings is not based on concepts that have only recently emerged in the scientific literature. See Commonwealth v. McGruder, 348 Mass. 712, 715 (1965). See also Barefoot v. Estelle, 463 U.S. 880, 896-97 (1983) (approving the use of expert psychiatric testimony on the issue of an offender’s future dangerousness. “The suggestion that no psychiatrists’s testimony may be presented with respect to a defendant’s future dangerousness is somewhat like asking us to disinvent the wheel”). Commonwealth v. Dengler, 2004 WL 318518 (Pa.Super. 2003). The Supreme Judicial Court has previously considered and rejected arguments that the concept of a sexually dangerous person is so inexact or vague that psychiatrists and psychologists are unable to opine about who may or may not meet the statutory criteria. Commonwealth v. Gomes, 355 Mass. 479, 482-83 (1969).
4. The defendant’s motion in this case is based on excerpts from articles in psychology journals in which certain named researchers opine that clinicians under certain conditions may not be able to accurately predict recidivism of general criminal or sexual offenders. As noted above in paragraph (3), it’s not clear that the data on which the defendant relies is relevant to the specific questions that the court must address under G.L.c. 123A, §1 in making the determination whether a person is a Sexually Dangerous Person. Furthermore, this court should not presume that the material on which the defendant relies is reliable or authoritative. The burden of establishing this preliminaiy fact rests with the defendant. The defendant does not meet this burden simply by submitting a collection of excerpts from specialized journals. For these reasons, the defendant has not raised a live issue that the testimony of the psychologists offered in this case is not based on scientific, technical or other specialized knowledge that is demonstrably reliable.
5. Standard for Probable Cause. In Commonwealth v. Reese, 438 Mass. 519 (2003), the Supreme Judicial Court explained the meaning of the standard for determining whether the Commonwealth has met its burden under G.L.c. 123A, §12(c). The standard is based on the directed verdict standard as articulated in Myers v. Commonwealth, 363 Mass. 843, 850 (1973). See Commonwealth v. Bruno, 432 Mass. 489, 510 (2000). The court is called upon to assess credibility but must do so with restraint. Unless the credibility of a witness is so weak or contradicted by clear facts that the case should be dismissed, the ultimate determination of credibility should be left to the trier of fact. Reese, supra 438 Mass, at 523 (citations and quotations omitted). The court added that even more restraint is called for in a § 12(c) hearing because the expert witnesses will not have had an opportunity to have access to what may be the most important sources of information in the case. Id. at 524. The court set forth a two-part test.
“The judge must be satisfied, first, that the Commonwealth’s admissible evidence, if believed, satisfies all of the elements of proof necessary to prove the Commonwealth’s case. Second, she must be satisfied that the evidence on each of the elements is not so incredible, insubstantial, or otherwise of such a quality that no reasonable person could rely on it to conclude that the Commonwealth had met its burden of proof. In conducting the second part of this assessment, the judge is to determine whether the evidence presented is of suitable quality to allow the action to proceed further along a course that was legislatively designed next to include a full expert examination of the subject. Id. at 524-25.
6. Likely to Offend in the Future. In determining whether the Commonwealth has produced sufficient evidence to establish probable cause to believe that the defendant is “likely to engage in sexual offenses if not confined to a secure facility,” G.L.c. 123A, §1, the court is mindful of the explanation of that element provided by the Supreme Judicial Court. “While likely indicates more than a mere propensity or possibility, it is not bound to the statistical probability inherent in a definition such as more likely than not, and the terms are not interchangeable. To conclude that likely amounts to a quantifiable probability, absent a more specific statutory expression of such a quantity, is to require mathematical precision from a term that, by its plain meaning, demands contextual, not statistical, analysis . . . [T]he term likely is not intended as a standard or burden of proof. Rather, it is descriptive of one characteristic (likely to engage in sexual offenses) of a sexually dangerous person.” Commonwealth v. Boucher, 438 Mass. 274, 277 (2002).
7. The Evidence. Both Dr. Rouse-Weir and Dr. Brown opined that the defendant suffered from a *529 personality disorder as that term is used in G.L.c. 123A, §1 (definition of “sexually dangerous person”). These opinions were based on the examination of the facts surrounding the defendant’s criminal offense in 1989, his criminal history, and the contents of his six-part department of Corrections file. Much of this material is in evidence (exhibits 1-11). In particular, I credit Dr. Rouse-Weir’s testimony that the defendant meets the criteria for a diagnosis as a person suffering from an Anti-Social Personality Disorder under the criteria outlined in the DSM IV. The basis for her opinion was the defendant’s pattern of conduct disorders at a young age, his repeated violations of disciplinary rules during the period of his incarceration, evidence of his deviant sexual arousal, his use of force, and the sadistic elements present in his offense characteristics. I also credit the testimony of Dr. Rouse-Weir that the defendant is likely to engage in sexual offenses in the future if not confined to a secure facility. Even though the defendant’s known sexual misconduct is limited to a single sexual offense, there was a basis for Dr. Rouse-Weir’s opinion in the evidence of the nature of this impulsive and violent act, including the defendant’s comment that he was surprised that the 14-year-old victim had as much pubic hair as she did, his anti-social personality disorder, his criminal history of other offenses, his lifelong history of alcohol abuse, his lack of stable adult relationships, his failure to complete sex offender treatment, and his failure to have had any successful period under court supervision.
ORDER
6. For the above reasons, the defendant’s motion in limine is DENIED. There is probable cause to believe that the defendant is a sexually dangerous person within the meaning of that term as used in G.L.c. 123A, §1.