Kern, Leila R., J.
The Commonwealth of Massachusetts has petitioned this court to commit the respondent, Edward C. Puopolo, as a sexually dangerous person under G.L.c. 123A. A probable cause hearing was conducted on April 20, 2011, as required under G.L.c. 123A, § 12(c). At the hearing the Commonwealth called one expert witness, Dr. Gregg Belle, and the respondent called Dr. Carol Ball as an expert witness.
Having considered the testimony at the probable cause hearing and the 14 exhibits offered into evidence at that hearing, this court finds there is probable cause to believe Puopolo is a sexually dangerous person as defined in G.L.c. 123A, §1, and orders that he be committed to the Treatment Center for a period not to exceed sixty days for the purpose of examination and diagnosis by two qualified examiners.
DISCUSSION
In Commonwealth v. Bruno, the Supreme Judicial Court defined the “sufficient showing” that permits a court to temporarily detain a respondent who is scheduled to be released from prison as probable cause to believe that the respondent is a sexually dangerous person within the meaning of the statute. 432 Mass. 489, 510-11 (2000). The Court in Bruno also determined that the standard for a “probable cause” hearing under G.L.c. 123A, § 12(c) is not the probable cause standard to arrest, but rather the “directed verdict” standard used in probable cause bind-over hearings under G.L.c. 276, §38. Id. at 510.
In Commonwealth v. Reese, the Supreme Judicial Court declared how hearing judges should implement this standard in § 12(c) hearings:
[T]he decision-making process ought to consist of a two-part inquiry, one quantitative and the other qualitative. “The judge must be satisfied, first, that the Commonwealth’s admissible evidence, if believed, satisfie[s] all of the elements of proof neces *612 sary to prove the Commonwealth’s case. Second, she must be satisfied that the evidence on each of the elements is not so incredible, insubstantial, or otherwise of such a quality that no reasonable person could rely on it to conclude that the Commonwealth had met its burden of proof.”
438 Mass. 519, 524 (2003), quoting Commonwealth v. Blanchette, 54 Mass.App.Ct. 165, 175 (2002). The Commonwealth must furnish expert testimony to meet this “directed verdict” standard. Bruno, 432 Mass. at 511. However, the hearing judge, “in assessing the credibility of expert witnesses," is to “act with even more restraint than a judge assessing the credibility of Commonwealth witnesses in the context of a bind-over hearing,” because expert witnesses “will not yet have access to the most important sources of information in the case at the time they are called to testify . . .” Reese, 438 Mass. at 523-24.
In order for Puopolo to be declared a sexually dangerous person, the Commonwealth needs to prove three elements beyond a reasonable doubt, that:
(1) Puopolo has been convicted of a “sexual offense,” as that term is defined under the law;
(2) he suffers from a mental abnormality or personality disorder; and
(3) the mental abnormality or personality disorder makes him likely to engage in further sexual offenses if not confined to a secure facility.
There is no dispute that Puopolo has been previously convicted of a “sexual offense” on more than one occasion. Therefore this court’s focus turns to the two disputed elements.
Mental Abnormality or Personality Disorder
The Commonwealth’s expert, Dr. Gregg Belle, testified that, in his opinion, Puopolo suffers from a mental abnormality—pedophilia. A mental abnormality is defined in the law as a “congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons.” G.L.c. 123A, §1. The congenital or acquired condition must be “a compulsive, obsessive, or other mental condition that renders [Puopolo] likely to continue to commit sexual offenses in the future.” Dutil, petitioner, 437 Mass. 9, 15 (2002). “While this condition may often correlate with one or more clinically defined mental illnesses, the statute does not require express proof of a clinically defined mental illness, nor does the Constitution require that it do so.” Id., citing Kansas v. Hendricks, 521 U.S. 346, 359 (1997).
Here, Dr. Belle testified that, based upon Puopolo’s predicate offenses of sexually assaulting his stepson as well as two prepubescent girls who were students in his language classes, while he was sexually active with his wife, Puopolo suffered from pedophilia. Dr. Belle testified that the diagnostic criteria for pedophilia, as set forth in the DSM IV -TR include;
A. Over a period of at least six months, recurrent, intense sexual arousing fantasies, sexual urges, or behaviors involving sexual activity with a prepubescent child or children (generally age 13 or younger).
B. The person has acted on these sexual urges, or the sexual urges or fantasies cause marked distress or interpersonal difficulty.
C. The person is at least 16 and at least 5 years older than the child or children in criterion A above.
Between 1984 and 1987, Puopolo sexually assaulted his stepson two to three times a week. During this period (1986), he also sexually assaulted two prepubescent females in his speech and language class. His offenses included exposing himself, fondling, and forced oral sex. Dr. Belle found noteworthy that these offenses occurred during a period of time when his son was born indicating his sexual activity with his wife. Based on the finding that his victims were both male and female children and he had peer age relationships as well, Dr. Belle placed Puopolo in a subtype of pedophilia called “non-exclusive.”[1]
This court does not find Dr. Belle’s finding of a mental abnormality to be “so incredible, insubstantial, or otherwise of such a quality that no reasonable person could rely on it to conclude that the Commonwealth had met its burden of proof’ on this element. Reese, 438 Mass. at 524, quoting Blanchette, 54 Mass.App.Ct. at 175.
Likelihood to Re-Offend if not Confined to a Secure Facility
As to the third criterion of the likelihood of re-offending if not placed in a secure facility, Dr. Belle testified that this criterion was also met. After analyzing both static and dynamic factors, Dr. Belle relied on the following bases for his conclusion: multiple child victims; male victim; unrelated victims; non-contact sex offense; and, failure to complete treatment. Also, Puopolo abused his authority as a step-parent and teacher to facilitate this offending.
Additionally concerning to Dr. Belle was Puopolo’s preying upon vulnerable victims. In prison he was disciplined for having sexually explicit mail correspondence with an underage female. While his actions were not criminal, they indicated poor judgment and lack of control in preying upon a vulnerable minor who had indicated to Puopolo that she had been previously sexually abused.
There is no dispute that Puopolo takes no responsibility for any of his sexual offenses and in all cases believes he was the one who was “set-up,” coerced into pleading guilty, etc. Further, he sees nothing wrong with his correspondence with the minor and insists he was just answering her questions although the content of the letters indicates otherwise.
*613 There also is no dispute that Puopolo scores in the low to moderate risk range on the STATIC 99. The experts do not agree, however, upon the weight of that in assessing the probability of Puopolo re-offending. Dr. Belle concluded that Puopolo’s score was an underestimate as it is with all pedophiles. This is similar to the effect of respondent’s age alone.
While Dr. Ball reported many protective factors available to Puopolo upon his release, Dr. Belle concluded these would not, in fact, serve as protective factors in this case. Dr. Belle concluded that Puopolo “would remain an untreated pedophile and would be learning no interventions to mitigate his risk for sexual offending . . . Pedophilia is a chronic and enduring condition, and there is no cure for the disorder. This is especially the case with male victims. While pedo-philic interest might persist throughout the adult lifecycle, with treatment, pedophiles can learn how to manage and contain these deviant drives. Presently, this would not be the case with Mr. Puopolo.”
Dr. Belle also testified that Puopolo’s mental abnormality makes him likely to re-offend if not confined to a secure facility. Dr. Belle acknowledged that according to the actuarial tool commonly used in the prediction of sexual recidivism—the Static 99—Puopolo fell into the moderate to low risk category; still he opined that Puopolo was likely to sexually re-offend. “ ‘Likely’ indicates more than a mere propensity or possibility,” but need not meet “the statistical probability inherent in a definition such as ‘more likely than not’ . . .” Commonwealth v. Boucher, 438 Mass. 274, 277 (2002).
As commonly used and understood, “likely” is a word that encompasses a range of probabilities depending on the specific context in which it is used. We conclude that something is “likely” if it is reasonably to be expected in the context of the particular facts and circumstances at hand.
In assessing the risk of re-offending, it is for the fact finder to determine what is “likely.” Such a determination must be made on a case-by-case basis, by analyzing a number of factors, including the seriousness of the threatened harm, the relative certainty of the anticipated harm, and the possibility of successful intervention to prevent that harm.
Id. at 276.
Given this court’s required restraint in assessing the Commonwealth’s expert at this stage of the proceedings and the legal definition of “likely,” this court finds Dr. Belle’s opinion that Puopolo is likely sexually to re-offend to be credible, substantial, and of such a quality that a reasonable person could rely on it to conclude that the Commonwealth had met its burden of proof on this element. Reese, 438 Mass. at 524.
ORDER
This court finds there is probable cause to believe that Edward Puopolo is a sexually dangerous person as defined in G.L.c. 123A, §1. Puopolo is to be committed to the Treatment Center for a period not to exceed sixty days for the purpose of examination and diagnosis by two qualified examiners.

Dr. Ball relied upon the results of her administration of the Abel Assessment Screen to Puopolo to reinforce her conclusion that the respondent is not a pedophile. The results of that screen indicated “Mr. Puopolo is a heterosexual man, with no deviant interest in children.”