## Commonwealth *vs.* Lavonrence Perkins.

Suffolk. September 4, 2012. - January 14, 2013.

Present: Ireland, C.J., Spina, Botsford, Gants, Duffly, & Lenk, JJ.

*Supreme Judicial Court,* Superintendence of inferior courts. *District Court,* Probable cause hearing. *Practice, Criminal,* Probable cause hearing, Continuance, Waiver, Capital case. *Statute,* Construction. *Moot Question.*

Exercising its discretion to review an appeal that was moot where the appeal raised issues that were of public importance and, because of their nature, capable of repetition, yet evading review, this court concluded that while a defendant remained in custody pursuant to a District Court complaint for murder in the first degree, G. L. c. 276, § 38 (§ 38), applied to him and provided him with the right to a probable cause hearing; further, this court concluded that probable cause hearings, under § 38, are to be held as soon as reasonably practicable in the circumstances presented; and that, if the Commonwealth seeks a continuance, under § 38, beyond the date scheduled at arraignment or thereafter, the judge is to make a meaningful inquiry into the specific reasons for the request and to consider whether the Commonwealth has shown good cause for it. [95-105] Gants, J., concurring, with whom Spina, J., joined. Ireland, C.J., concurring.

Civil action commenced in the Supreme Judicial Court for the county of Suffolk on March 24, 2011.

The case was heard by *Cordy,* J.

*Peter B. Krupp (E. Page Wilkins* with him) for the defendant.

*John P. Zanini,* Assistant District Attorney, for the Commonwealth.

Botsford, J. This case raises the question whether a defendant who is charged initially by complaint with murder in the first degree is entitled to a preliminary or probable cause hearing in the District Court[1] pursuant to the provisions of G. L. c. 276, § 38 (§ 38), and, if so, when the probable cause hearing

[1] In the present case, the complaint issued from the Boston Municipal Court Department. In this opinion, we refer to the Boston Municipal Court Department and the District Court Department collectively as the District Court.

described in § 38 must be held.[2] We conclude that § 38 is applicable to such a defendant and provides the defendant with the right to a probable cause hearing as soon as practicable in the circumstances. For the reasons we shall discuss, we decline to adopt a bright-line rule that would require the Commonwealth to conduct the probable cause hearing within thirty days or another definite time frame, but we conclude that because the probable cause hearing is an important stage in a criminal proceeding, the Commonwealth must demonstrate good cause to justify any request by the Commonwealth to continue it.

*Background.* On May 7, 2010, Cordell McAfee was shot and killed on the front porch of a house in the Dorchester section of Boston.[3] On December 20, 2010, a criminal complaint issued against the defendant, charging him with the murder of McAfee and the unlawful carrying of a firearm. The defendant was arrested in Rhode Island on January 18, 2011, and a judge in the Dorchester Division of the Boston Municipal Court Department (District Court; see note 1, *supra*) arraigned the defendant on the charges on January 21, 2011.

At the defendant's arraignment, the judge scheduled a probable cause hearing to be held on February 17, 2011. See Mass. R. Crim. P. 7 (b) (4), as appearing in 461 Mass. 1502 (2012).[4]

---

[2]The hearing conducted by a judge in the District Court pursuant to G. L. c. 276, §§ 38-42, to determine whether there is probable cause to hold a defendant who has been charged with a crime beyond the jurisdiction of the District Court for trial in the Superior Court is sometimes referred to as a "preliminary hearing." See *Lataille* v. *District Court of E. Hampden,* 366 Mass. 525, 528 (1974) (*Lataille*). However, the parties as well as some statutes and court rules use the term "probable cause" hearing, see, e.g., G. L. c. 263, § 4A (§ 4A); Mass. R. Crim. P. 3, as appearing in 442 Mass. 1502 (2004), and we do as well in this opinion. The meaning of the two terms is the same, and they often are used interchangeably. See, e.g., *Myers* v. *Commonwealth,* 363 Mass. 843, 844, 845-847, 851-852 (1973) (*Myers*).

[3]The facts of the underlying homicide investigation and case are not directly relevant to this appeal.

[4]Effective June 1, 2012, this court amended Mass. R. Crim. P. 7. See 461 Mass. 1501 (2012). As amended, rule 7 (b) (4) currently provides in relevant part that "[a]t a District Court arraignment on a complaint which is outside of the District Court's final jurisdiction or on which jurisdiction is declined, the court shall schedule the case for a probable cause hearing." This same language previously was included in Mass. R. Crim. P. 7 (e), as appearing in 442 Mass. 1506 (2004). Because the substance of the rule has not changed, we refer to the current version of rule 7 in this opinion.

On that date, the prosecutor requested a continuance.[5] The judge granted the requested continuance and scheduled a second date for the probable cause hearing in thirty days, to be held on March 16, 2011. At the March 16 hearing, the prosecutor requested another thirty-day continuance with an explanation that the Commonwealth needed additional time to obtain deoxyribonucleic acid evidence; she asked for a probable cause hearing date of April 15, 2011. Over objection of the defendant, the judge granted the requested continuance and rescheduled the probable cause hearing for April 15. On March 16 as well, the defendant filed a motion to dismiss or for release, arguing that the successive continuances of the probable cause hearing violated his liberty interests, given that he remained in custody during these delays. The judge denied the motion.

Thereafter, on March 24, 2011, the defendant filed a petition in the county court pursuant to G. L. c. 211, § 3, seeking an order that a probable cause hearing be held in the District Court as soon as possible and not later than April 15, 2011, and requesting in the alternative that the single justice dismiss the pending complaint against the defendant. Before the defendant's petition was heard by the single justice, at the scheduled April 15 hearing in the District Court, the prosecutor requested another continuance. She argued that, due to delays reaching the witnesses, the Commonwealth was unable to complete the grand jury investigation, and she stated that the grand jury was scheduled to meet again on May 6, 2011. The defendant again objected to a continuance, and filed a renewed motion to dismiss. The judge granted the Commonwealth's requested continuance and denied the defendant's motion to dismiss, setting May 9, 2011, as the next date for the probable cause hearing. The grand jury returned an indictment on May 7, 2011, charging the defendant with murder in the first degree. The probable cause hearing in the District Court never took place.[6]

Before the indictment was returned, the single justice heard

---

[5]On March 16, 2011, the second scheduled date for the probable cause hearing, the Commonwealth summarized what had occurred at the hearing on February 17: "I appeared on that date before the court and reported that it was my hope that by this date, March 16, that we would either have the case indicted or be very close to that."

[6]The Commonwealth nol prossed the complaint on May 12, 2011.

the defendant's c. 211, § 3, petition on April 26, 2011, and on May 9, 2011, issued a memorandum of decision denying the requested relief.[7] The defendant filed a timely appeal.

*Discussion.* 1. *Mootness.* As the defendant has been indicted and does not suggest that he would be entitled at this point either to a probable cause hearing or dismissal of the indictment, his petition for relief under G. L. c. 211, § 3, is moot. However, it is within the discretion of this court to answer questions that, due to circumstances, no longer may have direct significance to the parties but raise issues of public importance and, because of their nature, may be "capable of repetition, yet evading review." See *Lockhart* v. *Attorney Gen.*, 390 Mass. 780, 782-783 (1984), quoting *Wolf* v. *Commissioner of Pub. Welfare*, 367 Mass. 293, 298 (1975), and cases cited. Cf. *Wellesley College* v. *Attorney Gen.*, 313 Mass. 722, 731 (1943).

Whether a person charged and held on a District Court complaint for murder in the first degree is entitled to a probable cause hearing in the District Court and, if so, the timing of such a hearing and the relationship between a person's right to that hearing and the Commonwealth's right to initiate grand jury proceedings are issues that implicate the liberty interests of all defendants who are so situated, and more generally are significant for the proper administration of the criminal justice system. These issues have been briefed fully by the parties, and we will consider them.

2. *Probable cause hearings for defendants held on a complaint of murder.* a. *Introduction.* It is useful to set out the text of the two statutes that give rise to the issues just summarized.

General Laws c. 276, § 38, provides:

> "The court or justice[8] before whom a person is taken upon a charge of crime shall, *as soon as may be*, examine on oath the complainant and the witnesses for the prosecution, in the presence of the defendant, relative to any material matter connected with such charge. After the testimony

---

[7]There is no indication in his memorandum of decision or otherwise in the record that the single justice was aware that the defendant had been indicted on May 6, 2011.

[8]The reference is to the District Court or a judge in the District Court.

to support the prosecution, the witnesses for the prisoner, if any, shall be examined on oath, and he may be assisted by counsel in such examination and in the cross examination of the witnesses in support of the prosecution. Nothing contained herein shall be construed to prohibit the enforcement of the waiver provisions of Rule 3 of the Massachusetts Rules of Criminal Procedure. A defendant charged with an offense as to which he has the right to be proceeded against by indictment may elect a probable cause hearing in accordance with Rule 3 of the Massachusetts Rules of Criminal Procedure, but in such event shall be deemed to have waived his right to be proceeded against by indictment." (Emphasis added.)

General Laws c. 263, § 4A (§ 4A), provides in relevant part:

"A defendant charged in the district court with an offense as to which he has the right to be proceeded against by indictment shall have the right, *except when the offense charged is a capital crime*,[9] to waive that right, whereupon the court shall have as full jurisdiction of the complaint as if an indictment had been found. If a defendant is so charged and requests a probable cause hearing in district court, that request shall constitute a waiver of the right to be proceeded against by indictment and the prosecution may proceed upon the complaint. If a defendant waives the right to be proceeded against by indictment, a probable cause hearing shall be held in the district court unless the defendant waives the probable cause hearing or unless the prosecutor elects to proceed by indictment pursuant to the Massachusetts Rules of Criminal Procedure." (Emphasis added.)

---

[9] As originally enacted, § 4A read that all persons bound over "for trial in superior court upon a complaint charging a crime not punishable by death" may waive indictment. St. 1934, c. 358. After abolition of the death penalty, the Legislature defined a "capital case" for the purpose of review by the Supreme Judicial Court as "a case in which the defendant was tried on an indictment for murder in the first degree and was convicted of murder in the first degree." G. L. c. 278, § 33E, as amended through St. 1979, c. 346, § 2. See *Commonwealth* v. *O'Brien*, 371 Mass. 605, 606 (1976). Section 4A currently grants a defendant the right to waive indictment, "except when the offense charged is a capital crime." G. L. c. 263, § 4A, as amended by St. 1979, c. 344, § 18. "Capital crime" thus refers to a charge of murder in the first degree. See *Commonwealth* v. *Francis*, 450 Mass. 132, 136 (2007); Mass. R. Crim. P. 2 (b) (3), 378 Mass. 844 (1979).

The single justice implicitly determined that § 38, with its provision for a probable cause hearing in the District Court, applied to the defendant. However, the single justice concluded that a District Court judge maintains discretion to continue a scheduled probable cause hearing, and he found no abuse of discretion in the continuances granted by the District Court judge in the defendant's case.

The defendant argues that the single justice committed an error of law in denying the defendant's request for an immediate probable cause hearing or dismissal of the District Court complaint. He contends that § 38 protects a defendant who is charged in the District Court but subject to being bound over to the Superior Court from being held in custody without a neutral assessment, within a short time after the prosecution actually begins, of whether there is probable cause to support the charges against him.[10] In particular, the defendant points to § 38's requirement that a judge conduct a probable cause hearing to review the charges "as soon as may be," a time frame that he argues should be no more than thirty days from the date of arraignment. He views a limit of thirty days as consistent with (1) Mass. R. Crim. P. 7 (b) (4), as appearing in 461 Mass. 1501 (2012) (see note 4, *supra*), directing a District Court judge to schedule a probable cause hearing at the time of arraignment on any complaint that is beyond the jurisdiction of that court; and (2) G. L. c. 276, § 35, which prohibits at any one time the continuance beyond thirty days of any hearing or trial in the District Court involving a defendant held in custody. He contends that if any continuance beyond thirty days is permissible, it must only be in "exceptional circumstances" that do not include scheduling or completing grand jury presentations.

The Commonwealth, on the other hand, asserts that a defendant charged with murder in the first degree has no right to a probable cause hearing under § 38. The argument is that under

---

[10]As a general matter, G. L. c. 276, § 38 (§ 38), with its provision for a probable cause hearing, applies to criminal cases initiated in the District Court where (1) that court does not have final jurisdiction over the crime or crimes charged, and binds the defendant over for indictment and trial in the Superior Court; and (2) the District Court, although possessing final jurisdiction concurrent with the Superior Court, declines to exercise it and again binds the defendant over. See *Lataille*, 366 Mass. at 528.

both §§ 4A and 38, the right to a probable cause hearing only exists for a defendant who is authorized to, and does, waive his right to an indictment and elects in its stead a probable cause hearing; and that because under § 4A, a defendant charged with murder in the first degree is expressly prohibited from making such a waiver, he has no corresponding right to a probable cause hearing. We consider first the Commonwealth's claim.[11]

b. *Availability of probable cause hearings to defendants charged by complaint with murder in the first degree.* Considering § 38 and § 4A together, we conclude that the Commonwealth's argument lacks merit. Section 38 by its terms provides for a probable cause hearing in cases where a defendant is charged with a crime in the District Court that lies beyond the jurisdiction of that court and for which the defendant is entitled to be proceeded against by indictment. See *Corey* v. *Commonwealth,* 364 Mass. 137, 140-141 (1973) (*Corey*); *Myers* v. *Commonwealth,* 363 Mass. 843, 846-847, 857 (1973) (*Myers*). See also *Lataille* v. *District Court of E. Hampden,* 366 Mass. 525, 528-529 (1974) (*Lataille*). In providing this statutory right, § 38 makes no distinction between a charge of murder in the first degree and any other crime, and indeed makes no mention of murder or a "capital crime" at all. It is true that the final two sentences of § 38, added in 1985, see St. 1985, c. 256, reference the waiver provisions of Mass. R. Crim. P. 3 as then in effect, see 378 Mass. 847 (1979),[12] and specifically state that any election of a probable cause hearing in accordance with rule 3 operates as a waiver of the right to be proceeded against by indictment. But the same version of rule 3 also provided that a

---

[11]The Commonwealth did not present its statutory argument based on § 4A to the single justice, and therefore, the defendant asserts, the Commonwealth should be foreclosed from raising it here. As indicated previously, the issues raised here are significant to the operation of the criminal justice system. We decline to apply a strict waiver rule in this instance, and we consider the merits of the Commonwealth's claim.

[12]Rule 3 of the Massachusetts Rules of Criminal Procedure, as appearing in 378 Mass. 847 (1979), and as in effect when § 38 was amended in 1985, contained a mandatory or "forced waiver" provision: "if a defendant is charged in the District Court with a crime as to which he has the right to be proceeded against by indictment and requests a probable cause hearing, that request shall constitute a waiver of the right to be proceeded against by indictment and the Commonwealth may proceed upon the complaint." Mass. R. Crim. P. 3 (a). Rule 3 has since been amended. See note 13, *infra.*

defendant charged with murder in the first degree (i.e., a "capital crime") was not permitted to waive indictment. Mass. R. Crim. P. 3 (b) (2), as appearing in 378 Mass. 847.[13] Accordingly, we read the waiver mandate added to § 38 in 1985 as simply inapplicable to a defendant in the position of the defendant here, i.e., a defendant charged with murder in the first degree; just as such a defendant was covered by and entitled to a probable cause hearing under the general terms of § 38 before 1985, he remained so thereafter.

Section 4A in relevant part essentially tracks the same waiver provisions that were incorporated into the original version of Mass. R. Crim. P. 3 and added by reference to § 38 in 1985.[14] Thus, § 4A requires a defendant who is charged in the District Court with an offense for which he has a right to be proceeded against by indictment, *other* than murder in the first degree, to waive the indictment right in order to obtain a probable cause hearing in the District Court. Because the defendant here is charged with murder in the first degree, the waiver provision in § 4A is irrelevant and does not infringe on his independent right to a probable cause hearing under § 38.[15]

---

[13]Rule 3 continues to provide that a defendant charged with a capital crime does not have the right to waive indictment. Mass. R. Crim. P. 3 (c) (1), as appearing in 442 Mass. 1502 (2004).

Although of no direct relevance here, it is worth noting that the "forced waiver" provision of Mass. R. Crim. P. 3 (a), as appearing in 378 Mass. 847 (1979), was removed from rule 3 in 2004. See Mass. R. Crim. P. 3, as appearing in 442 Mass. 1502; Reporter's Notes to Rule 3, Mass. Ann. Laws Court Rules, Rules of Criminal Procedure, at 1340 (LexisNexis 2012-2013). The removal was prompted by concerns that a forced election between indictment and a probable cause hearing for a defendant charged in the District Court with a noncapital felony may "infringe on a defendant's constitutional right to indictment and statutory right to a probable cause hearing." *Id.*

[14]The language in § 4A specifically linking the right to a probable cause hearing with waiver of the right to indictment was added to the statute in 1979, as part of a general effort to conform certain statutes to the then-new rules of criminal procedure. See St. 1979, c. 344, § 18. Before the 1979 amendment, § 4A contained no mention of probable cause hearings and simply provided for the possibility that a defendant who was bound over to the Superior Court for trial and charged with a crime, again other than murder in the first degree, could waive indictment and thereby secure for himself the right to prompt arraignment in the Superior Court. See G. L. c. 263, § 4A, as inserted by St. 1934, c. 358.

[15]The current version of Mass. R. Crim. P. 3 may be inconsistent with the

Both before and after the 1979 amendment to § 4A (see note 14, *supra*), this court consistently has interpreted § 38 and its probable cause hearing requirement to apply to defendants charged with murder in the first degree. See, e.g., *Commonwealth v. Daye*, 435 Mass. 463, 468-470 (2001); *Commonwealth v. Fisher*, 433 Mass. 340, 347 (2001); *Commonwealth v. Santos*, 402 Mass. 775, 786 (1988); *Commonwealth v. Spann*, 383 Mass. 142, 145 (1981); *Lataille*, 366 Mass. at 530-531. The Commonwealth's argument here does not persuade us to alter this established interpretation of § 38. We conclude, therefore, that while the defendant remained in custody pursuant to a District Court complaint for murder, § 38 applied to him and provided him with the right to a probable cause hearing in accordance with its terms.[16] We therefore turn to § 38 to examine those terms.

c. *Timing of the probable cause hearing under G. L. c. 276, § 38.* As the *Myers* and *Corey* cases describe, probable cause hearings protect significant liberty interests of defendants who ultimately will be tried in the Superior Court. See *Corey*, 364 Mass. at 141; *Myers*, 363 Mass. at 847. The defendant points to these two cases as supporting, if not compelling, the conclusion that under § 38 he was entitled to a probable cause hearing in short order following his arraignment.[17] But in both *Myers* and *Corey*, the defendants actually received probable cause hear-

---

waiver provisions in both § 4A and § 38, insofar as the current rule provides that a defendant may elect to waive the right to be proceeded against by indictment, and then separately entitles all defendants charged with an offense to which they have a right to be proceeded against by indictment to a probable cause hearing "unless an indictment *has been returned* for the same offense" (emphasis added). Mass. R. Crim. P. 3 (c), (f), as appearing in 442 Mass. 1502 (2004). We need not resolve any possible conflict between the statutes and rule here, however, because as indicated in the text, neither § 4A nor the waiver provisions at the end of § 38 apply to defendants initially charged in a complaint with murder in the first degree.

[16]A final point on this subject: as we discuss in the following section, the purpose of § 38 is to ensure that a defendant who will be bound over for indictment and trial in the Superior Court is not held in custody awaiting a grand jury indictment or trial without a demonstration of probable cause that he committed the crime charged. The Commonwealth fails to offer any reason why defendants charged with murder in the first degree, in contrast to any other felony, are not entitled to this protection.

[17]Indeed, because of the importance of those interests, the court in *Myers* concluded that it was appropriate in a probable cause hearing to apply the

ings, and the court's focus was solely on the manner in which those hearings had been conducted; there was no issue raised in either case about what is central to the defendant's concerns here, namely, the timing of the probable cause hearing and the relationship between the timing of the hearing and the initiation of grand jury proceedings by the Commonwealth for the purpose of obtaining an indictment.

Section 38 directs that the probable cause hearing occur "as soon as may be" after arraignment, and this phrase must be interpreted in a manner consistent with the legislative purpose of that statute. See *District Attorney for the N. Dist.* v. *School Comm. of Wayland*, 455 Mass. 561, 568 569 (2009), quoting *Board of Educ.* v. *Assessor of Worcester*, 368 Mass. 511, 513 514 (1975). In *Myers*, 363 Mass. at 847, and *Corey*, 364 Mass. at 141, this court stated that the "primary function" of the § 38 probable cause hearing is to "screen out at this early but critical stage of the criminal process those cases that should not go to trial, thereby sparing individuals from being held for trial, and from being unjustifiably prosecuted." *Myers, supra.* See *Corey, supra* at 140-142. The dual requirements that defendants may only be held for trial where the magistrate determines that (1) a crime has been committed, and (2) there is probable cause to believe a defendant guilty of the crime charged, see G. L. c. 276, § 42, create "an effective bind-over standard" to eliminate groundless charges that should not go to trial. *Corey, supra* at 141. *Myers, supra.*

As set out in *Myers*, to establish probable cause under § 38, the Commonwealth must present sufficient credible evidence to meet the directed verdict standard, that is, "whether there is enough credible evidence to send the case to the jury." *Myers*, 363 Mass. at 850. See generally *id.* at 848-850. Meeting this standard requires the presentation of substantially more evidence than is necessary in most cases for an indictment.[18] Practically speaking, therefore, "as soon as may be" must be interpreted in

same standard to the evaluation of probable cause as governs a motion for a directed verdict at trial, a standard that is more substantially rigorous than the standard of probable cause for arrest. *Myers*, 363 Mass. at 850. We return to this issue *infra*.

[18]Compare *Commonwealth* v. *McCarthy*, 385 Mass. 160, 163 (1982) (to indict, "at the very least the grand jury must hear sufficient evidence to

a manner that affords the Commonwealth enough time reasonably to marshal and present the quantity and quality of evidence that is necessary to meet the probable cause hearing's heightened probable cause standard. Interpreting the phrase as the defendant suggests, that is, by imposing a rigid thirty-day requirement in which the Commonwealth must be prepared to establish probable cause, would not meet this need.

What we have just stated about the meaning of "as soon as may be" is based on a consideration of the nature of the § 38 probable cause hearing. However, as § 38 expressly reflects, there are crimes for which a defendant has a right, constitutionally protected, to be proceeded against by indictment. Furthermore, as recognized by statute and court rule, the Commonwealth may elect to proceed by indictment even if the defendant would be willing to waive the right. See G. L. c. 263, § 4A; Mass. R. Crim. P. 3 (e), as appearing in 442 Mass. 1502 (2004). We have recognized that an indictment offers an "alternative means [to a probable cause hearing] for establishing probable cause to hold a defendant for trial." *Lataille*, 366 Mass. at 530-531.[19] Given that a defendant and the Commonwealth each have a right

establish the identity of the accused and probable cause to arrest him" [citations omitted]). See *Commonwealth* v. *Moran*, 453 Mass. 880, 884, 886-887 (2009) (grand jury must hear evidence on each element of crime for which indictment is sought, but standard is whether evidence is sufficient to establish probable cause to arrest). See also *Commonwealth* v. *Roman*, 414 Mass. 642, 647 (1993) ("grand jury did not need evidence warranting a finding of the defendant's guilt beyond a reasonable doubt. It needed only evidence establishing probable cause to arrest").

[19]In *Lataille*, 366 Mass. at 531, we stated:

> "Where probable cause is to be determined by a [probable cause] hearing on a complaint in the District Court the panoply of defensive procedures announced in the *Corey* and *Myers* cases applies. However, in the context of grand jury proceedings, the return of an indictment is itself a determination of probable cause and renders unnecessary a [probable cause] hearing.

> "To hold otherwise would be to undermine the function traditionally performed by the grand jury . . . .

> "On the contrary, the grand jury is an institution preserved by the Constitution of this State. . . . Accordingly, the grand jury has long been regarded as an important part of our criminal procedure." (Footnotes and citations omitted.)

respectively to be charged and to charge by indictment, it makes sense to construe the phrase "as soon as may be" in § 38 with the indictment alternative in mind; indeed, it is especially appropriate to do so in a case such as this, where, because the charge is murder in the first degree, the Commonwealth is required to proceed by indictment and the defendant cannot waive it. G. L. c. 263, § 4A.

In sum, we conclude that the phrase "as soon as may be" in § 38 is best interpreted to mean that the probable cause hearing is to be held as soon as reasonably practicable in the circumstances presented — circumstances that may include, as here, the requirement that the Commonwealth proceed by indictment or, in a noncapital case, the election of the Commonwealth to do so. The phrase cannot be defined, as the defendant would have it, by establishing in advance a fixed number of days within which the hearing must be held, because the particular circumstances of each case will be different.[20]

In construing the phrase "as soon as may be" in this manner, we do not intend to suggest that a judge is free to continue a scheduled probable cause hearing as a matter of course or simply based on a prosecutor's statement that the Commonwealth needs more time. The important purpose of the § 38 probable cause hearing — to prevent the defendant from being held for trial on a groundless or unmeritorious charge, see *Corey*, 364 Mass. at 141; *Myers*, 363 Mass. at 847 — remains a central consideration. The Commonwealth is not entitled to proceed at whatever pace it might choose, either in marshaling evidence to establish probable cause for the probable cause hearing or in presenting a case to the grand jury in order to secure an indictment. And a judge may not simply rubber stamp a Commonwealth's request for a continuance. Rather, if the Commonwealth seeks to continue

---

[20]The defendant cites a number of decisions of this court that define the term "forthwith" or the phrase "as soon as may be," as they appear in various statutes, to mean, essentially, with promptness and due diligence. See *Commonwealth* v. *Bouchard*, 347 Mass. 418, 420 (1964); *Crawford* v. *Roloson*, 254 Mass. 163, 167 (1925); *Griffin* v. *Griffin*, 222 Mass. 218, 219 (1915). These cases, however, also emphasize that the phrase imports a concept of reasonableness — that is, what is reasonably prompt in the circumstances. See *Tambrands, Inc.* v. *Commissioner of Revenue*, 46 Mass. App. Ct. 522, 527 (1999) ("attendant circumstances need to be considered"). The interpretation we give to "as soon as may be" in § 38 is consistent with these cases.

the probable cause hearing beyond the date scheduled at arraignment or thereafter, the judge's responsibility is to make a meaningful inquiry into the specific reasons for the request, and to consider whether the Commonwealth has shown good cause for it. An active, ongoing grand jury investigation should be considered as a factor, but an ongoing grand jury investigation, taken by itself, is not necessarily sufficient to demonstrate good cause; among other factors, the amount of time the defendant has been held in custody and the time that has elapsed since arraignment should be weighed. Finally, in light of the bright-line rule set out in G. L. c. 276, § 35,[21] where a defendant is being held in custody, any one continuance of the probable cause hearing may not exceed thirty days.

If the Commonwealth does not provide good cause for a continuance, as the single justice suggested, the judge should consider directing the Commonwealth to proceed with the probable cause hearing; alternatively, the judge might dismiss the complaint or at least consider bail. A dismissal, of course, "is not a bar to a subsequent indictment for the same offence." *Burke* v. *Commonwealth*, 373 Mass. 157, 159 (1977), quoting *Commonwealth* v. *Hamilton*, 129 Mass. 479, 481 (1880). *Commonwealth* v. *Britt*, 362 Mass. 325, 330 (1972). See *Commonwealth* v. *Crowe*, 21 Mass. App. Ct. 456, 471-472, cert. denied sub nom. *Pirrotta* v. *Massachusetts*, 479 U.S. 838 (1986) (nolle prosequi of complaint does not ordinarily bar indictment).

Returning to the decision of the single justice, we conclude that he did not abuse his discretion or commit other error of law in denying the relief sought by the defendant. The single justice appeared to consider the existence of an ongoing grand jury investigation as perhaps a principal factor that would justify a

---

[21]General Laws c. 276, § 35, read in conjunction with St. 1993, c. 110, § 271, provides in relevant part:

"The court or justice may adjourn an examination or trial from time to time . . . . In the meantime, if the defendant is charged with a crime that is not bailable, he shall be committed; otherwise, he may recognize in a sum . . . for his appearance for such examination or trial, or for want of such recognizance he shall be committed. *While the defendant remains committed, no adjournment shall exceed thirty days at any one time against the objection of the defendant*" (emphasis added).

continuance of the probable cause hearing, but he set out other important factors to consider in addition.[22]

*Conclusion.* The defendant's appeal is dismissed as moot.

*So ordered.*

GANTS, J. (concurring, with whom Spina, J., joins). I agree with the court that the "important purpose" of the probable cause hearing described in G. L. c. 276, § 38 (§ 38), is "to prevent the defendant from being held for trial on a groundless or unmeritorious charge" by providing a judicial determination of probable cause.[1] *Ante* at 103, citing *Corey v. Commonwealth*, 364 Mass. 137, 141 (1973), and *Myers v. Commonwealth*, 363 Mass. 843, 847 (1973) (*Myers*). I also agree with the court that, under our existing jurisprudence, this so-called probable cause hearing requires the Commonwealth to prove more than probable cause to arrest. *Myers*, *supra* at 850 (probable cause to bind over case to Superior Court means judge "should view the case as if it were a trial and he were required to rule on whether there is enough credible evidence to send the case to the jury"). Because a prosecutor must meet this "directed verdict" standard, *id.*, and because he must do so by presenting evidence that would be admissible at trial rather than reliable hearsay, *id.* at 849 n.6; see *Paquette v. Commonwealth*, 440 Mass. 121, 132 (2003), cert. denied, 540 U.S. 1150 (2004), I agree with the

[22]The single justice listed the following factors: "the length of time the defendant has been held since his arrest, whether the grand jury are actively hearing evidence, the need to protect grand jury secrecy (and the witnesses who may be called there) from exposure and intimidation, reasonable delays occasioned by the need to obtain the results necessary to the grand jury's consideration of the matter, the showing of harm or lack of harm occasioned by the delay, and the over-all proper and timely administration of justice." We agree that these are appropriate considerations to weigh in considering a request to continue the probable cause hearing.

[1]As addressed *ante* at note 2, the type of hearing in question has been called by several different names in our cases. For ease of reference, I follow the court's choice in terminology and refer to these hearings as "probable cause hearings." However, it should be noted that the type of hearing being addressed is distinct from a "determination of probable cause for detention" as described in Mass. R. Crim. P. 3.1, 442 Mass. 1503 (2004), and *Jenkins v. Chief Justice of the Dist. Court Dep't*, 416 Mass. 221 (1993).

court that the obligation in § 38 to conduct a probable cause hearing " 'as soon as may be' must be interpreted in a manner that affords the Commonwealth enough time reasonably to marshal and present the quantity and quality of evidence that is necessary to meet the probable cause hearing's heightened probable cause standard." *Ante* at 101-102. And I recognize that, as a result of this interpretation, for all practical purposes, where the Commonwealth intends to indict a defendant, the defendant will be denied a probable cause hearing provided the prosecution proceeds with all deliberate speed to obtain an indictment.

I write separately to note that the only reason why it is reasonable to give a prosecutor so much leeway to delay a probable cause hearing is because we have declared that probable cause at a probable cause hearing does not mean probable cause to believe that the defendant has committed a crime but instead means proof established by admissible evidence that is legally sufficient to establish guilt beyond a reasonable doubt.[2] If "probable cause" at a probable cause hearing meant what it means at a grand jury proceeding, i.e., whether there is "sufficient evidence to find probable cause for arrest," *Commonwealth* v. *LaVelle*,

---

[2]It is difficult to decipher precisely what is the standard of proof to bind a defendant over for trial at a probable cause hearing. We declared in *Myers* v. *Commonwealth*, 363 Mass. 843, 850 (1973) (*Myers*), that a judge conducting a bind-over hearing "should view the case as if it were a trial and he were required to rule on whether there is enough credible evidence to send the case to the jury." And we directed that a judge "should dismiss the complaint when, on the evidence presented, a trial court would be bound to acquit as a matter of law." *Id.* Under a directed verdict standard in a criminal case, a judge may send a case to a jury only where the evidence, viewed in the light most favorable to the prosecution, is sufficient to permit a rational fact finder to find proof beyond a reasonable doubt. See *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979). The *Myers* standard, however, seems to require a judge to consider only "credible" evidence, *Myers, supra* at 848, 850, which may be a more demanding standard than that applied in considering a defendant's motion for a required finding of not guilty, where a judge makes no evaluation of credibility. But in *Myers*, we went on to declare that the "minimum quantum of evidence required by this bind-over standard is more than that for probable cause for arrest but less than would 'prove the defendant's guilt beyond a reasonable doubt.' " *Id.* at 850, quoting *People* v. *Bieber*, 100 N.Y.S.2d 821, 823 (N.Y.C. Magis. Ct. 1950). Because a directed verdict standard is defined as evidence legally sufficient to establish proof beyond a reasonable doubt, *Commonwealth* v. *Latimore, supra* at 676-677, it is not clear how a lower quantum of evidence than that would suffice to meet a "directed verdict" standard. *Myers, supra* at 850.

414 Mass. 146, 149-150 (1993), quoting *Commonwealth* v. *Mc-Gahee*, 393 Mass. 743, 746-747 (1985), and if such a finding of probable cause could rest on reliable hearsay as it may at a grand jury proceeding, *Commonwealth* v. *St. Pierre*, 377 Mass. 650, 654-655 (1979), and cases cited, it would be practicable for a prosecutor to proceed with a probable cause hearing no later than thirty days after a defendant's initial appearance in cases where no indictment has yet been returned.

Under Federal law, a defendant charged with a felony or misdemeanor is entitled to a preliminary hearing[3] no later than twenty-one days after the initial appearance unless a grand jury indictment is returned before that date or the defendant agrees to the filing of a criminal information. Fed. R. Crim. P. 5.1(c) (2009).[4] At a Federal preliminary hearing, the prosecutor need only meet the more typical "probable cause" standard of providing "evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt," *Coleman* v. *Burnett*, 477 F.2d 1187, 1201-1202 (D.C. Cir. 1973), and this determination "may be based upon hearsay evidence in whole or in part." Fed. R. Crim. P. 5.1(e) advisory committee's note (2002 amendment); Fed. R. Crim. P. 5.1(a) advisory committee's note (1972). Consequently, under Federal law the preliminary hearing truly fulfils its "primary function . . . to screen out at this early but critical stage of the criminal process those cases that should not go to trial, thereby sparing individuals from being held for trial, and from being unjustifiably prosecuted." *Myers, supra* at 847. See *Lataille* v. *District Court of E. Hampden*, 366 Mass. 525, 530 (1974), quoting *Coleman* v. *Alabama*, 399 U.S. 1, 9 (1969) (holding "primary function of the preliminary hearing" is "screening out of 'an erroneous or improper prosecution' ");

[3]The Federal equivalent to the Massachusetts probable cause hearing under G. L. c. 276, § 38, is called a "preliminary hearing," and a defendant at such a hearing is bound over for "further proceedings" if the magistrate judge "finds probable cause to believe an offense has been committed and the defendant committed it." Fed. R. Crim. P. 5.1(e) (2009).

[4]A Federal defendant who is in custody is entitled to a preliminary hearing within fourteen days of initial appearance unless the defendant is indicted or agrees to the filing of a criminal information before that date. Fed. R. Crim P. 5.1(a), (c) (2009).

*Coleman* v. *Burnett, supra* at 1199 n.64, quoting S. Rep. No. 371, 90th Cong., 1st Sess. 34-35 (1967) (noting "fundamental purpose" of Federal preliminary hearing "is to prevent unjustified restraints of liberty").

Under our current interpretation of Massachusetts law, the probable cause hearing does not fulfil its intended function, because it almost never actually happens. As demonstrated by the attestations in eleven affidavits filed by criminal defense attorneys in this case, a probable cause hearing in a criminal case is virtually never conducted in the courts of Massachusetts; the only preliminary screening of a defendant's case is conducted by a grand jury, sometimes months after the initial appearance. For all practical purposes, in Massachusetts the probable cause hearing is a relic of the past, a theoretical entitlement that in practice is only rarely obtained.

The irony is that the reason why probable cause hearings have become as rare as Boston Red Sox championships is because, for the ostensibly benevolent purpose of protecting defendants from trial where the Commonwealth's case against them is too weak to obtain a conviction, we have made the prosecutor's burden of proof so high at such hearings, and have obligated the prosecutor to meet this burden with admissible evidence rather than reliable hearsay. See *Myers, supra* at 847, 850. In practice, our benevolence toward defendants has backfired: there is now virtually no judicial screening of criminal cases after arrest and a defendant may be held for months in custody before either a grand jury or a judge (almost invariably a grand jury) makes a determination of probable cause. Rather than helping defendants escape "groundless or unsupported charges" or "sparing individuals from being held for trial," *id.* at 847, the heightened standard we announced in *Myers* has had the unintended result of criminal defendants being held for extended periods without judicial screening to allow the Commonwealth sufficient time to meet the more demanding "directed verdict" standard or, more likely, to obtain a grand jury indictment. Where, as here, a defendant is charged with a capital crime, the Commonwealth is likely to have even more abundant "good cause" for requesting a continuance of the probable cause hearing, *ante* at 103-104, because the Commonwealth will need

adequate time to conduct forensic testing and to subpoena key civilian witnesses before the grand jury to "lock in" their testimony before they testify at trial. In short, by setting the directed verdict standard announced in *Myers* as the standard for probable cause at a hearing under G. L. c. 276, §§ 38-42, we have set so rigorous a judicial screen that we now effectively have no judicial screening at all, and some criminal defendants will be unjustly held for an extended period of time even though the evidence against them could not survive an independent review of probable cause even under the Federal standard.

Like the Federal courts, a "substantial majority of jurisdictions reject[s] both the prima facie [directed verdict] standard and the mini-trial type of preliminary hearing," which allows consideration only of evidence that would be admissible at trial. 4 W.R. LaFave, J.H. Israel, N.J. King, & O.S. Kerr, Criminal Procedure § 14.3(a), at 326 (3d ed. 2007).[5] Apart from Massachusetts, the only State cited as requiring the prosecution to

---

[5]See, e.g., *People* v. *Nagle*, 25 Cal. 2d 216, 222 (1944) ("[i]t must be remembered that the evidence before a committing magistrate at a preliminary examination need not be such as would require a conviction. . . . 'Reasonable or probable cause' means such a state of facts as would lead a man of ordinary caution or prudence to believe, and conscientiously entertain a strong suspicion of the guilt of the accused"); *People* v. *District Court*, 926 P.2d 567, 570 (Colo. 1996), citing *People* v. *District Court*, 803 P.2d 193, 196 (Colo. 1990) ("standard for finding probable cause requires only that the prosecution present evidence sufficient to induce a person of ordinary prudence and caution to entertain a reasonable belief that the defendant committed the crime charged"); *Hunter* v. *District Court*, 190 Colo. 48, 51 (1975) (holding Colorado's bind-over hearing is "not a mini-trial" and that it does not focus on "consideration of the probability of conviction at the ensuing trial"); *State* v. *Bockert*, 257 Kan. 488, 492 (1995), citing *State* v. *Puckett*, 240 Kan. 393 (1986) (it is not "function of the magistrate to conclude there should be no prosecution because the possibility of a conviction may be remote or virtually nonexistent"); *People* v. *Tower*, 215 Mich. App. 318, 320 (1996), citing *People* v. *Woods*, 200 Mich. App. 283, 288 (1993) ("[p]robable cause that the defendant has committed the crime charged is established by a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious person in the belief that the accused is guilty of the offense charged"); *Sheriff, Washoe County* v. *Middleton*, 112 Nev. 956, 961 (1996), quoting *Sheriff, Washoe County* v. *Hodes*, 96 Nev. 184, 186 (1980) ("at the preliminary hearing stage, probable cause to bind a defendant over for trial 'may be based on "slight," even "marginal" evidence because it does not involve a determination of guilt or innocence of an accused' "); *People* v. *Torres*, 99 Misc. 2d 767, 769 (N.Y. City Crim. Ct. 1978) ("preliminary hearing is basically a first screening of the charges, its function is not to try

meet a directed verdict standard at a probable cause hearing is Pennsylvania. *Id.* at § 14.3(a), at 324 n.31, citing *Commonwealth v. Otis*, 364 Pa. Super. 464 (1987). See *Commonwealth v. Huggins*, 575 Pa. 395, 402 (2003), cert. denied, 541 U.S. 1012 (2004), citing *Commonwealth v. Marti*, 779 A.2d 1177, 1180 (Pa. Super. Ct. 2001) ("evidence need only be such that, if presented at trial and accepted as true, the judge would be warranted in permitting the case to go to the jury"). But see *Commonwealth v. Wojdak*, 502 Pa. 359, 389-390 (1983) (Hutchinson, J., concurring and dissenting) (noting he was "troubled" by majority's holding "that the Commonwealth at the preliminary hearing must present evidence which if accepted as true would warrant a judge in allowing the case to go to the jury," and opining that "it is unreasonable to require the Commonwealth to present a case sufficient to survive a demurrer at trial at a preliminary hearing" when such hearings must be held soon after arraignment).

The State of New York once imposed a heightened "prima facie case" standard at probable cause hearings,[6] but in 1970, the New York Legislature enacted the New York Criminal Procedure Law, which required only "reasonable cause to believe that the defendant committed a felony." N.Y. Crim. Proc. Law § 180.60 (McKinney 1975). Staff comments on the proposed New York criminal procedure law in 1967 addressed some of the reasons for this change:

> "Comparing New York's [former 'prima facie case'] standard with those of many other jurisdictions, it will be

---

the defendants and it does not require the same degree of proof or quality of evidence as is necessary to support an indictment or conviction at trial"); *State v. Clark*, 20 P.3d 300, 305-306 (Utah 2001), quoting *State v. Anderson*, 612 P.2d 778, 783-784 (Utah 1980) ("we see no principled basis for attempting to maintain a distinction between the arrest warrant probable cause standard and the preliminary hearing probable cause standard. . . . This 'reasonable belief' standard has the advantage of being more easily understood while still allowing magistrates to fulfill the primary purpose of the preliminary hearing, 'ferreting out . . . groundless and improvident prosecutions' ").

[6]See 1969 N.Y. Sess. Laws 2345, 2347 (McKinney), Commission on Revision of the Penal Law and Criminal Code, Memorandum in Support and Explanation of Proposed Criminal Procedure Law (S. Int. 4624, A. Int. 6579) (noting under old Criminal Code, standard to be applied at these hearings was "very cloudy, but most judges require[d] a legally sufficient or prima facie case").

found that New York require[d] much more in the way of proof to hold a person for a grand jury than do the laws of many other states and the federal law. This does not, in practice, really benefit a defendant, but rather leads to confusion and corner-cutting. Very often there may be sufficient evidence for the issuance of a warrant of arrest or for an arrest without a warrant, but not enough evidence for a prima facie case. This may cause an arrested person to be held for a considerable time while the case is being investigated so that a complaint which spells out a prima facie case can be prepared. . . . Meanwhile, the defendant's main interest is in obtaining his release from custody. . . . One objective of the procedure proposed here is to promote promptness of the hearing as a matter of practice as well as requiring such promptness as a matter of law. . . . In effect, if the evidence was sufficient for the issuance of a warrant of arrest or for an arrest without a warrant — all other things being equal — it should be sufficient to hold a person for the action of the grand jury."

Staff Comment, Proposed New York Criminal Procedure Law § 90.60, at 137-138 (1967), now codified at N.Y. Crim. Proc. Law § 180.60 (McKinney 1975). See 1969 N.Y. Sess. Laws 2345, 2348 (McKinney), Commission on Revision of the Penal Law and Criminal Code, Memorandum in Support and Explanation of Proposed Criminal Procedure Law (S. Int. 4624, A. Int. 6579) ("[t]o predicate reasonable cause as sufficient for the first screening process is hardly shocking, especially since most jurisdictions never require any more than that at any stage prior to trial").

It is important to note that, if we were to revisit our decision in *Myers* and join the Federal courts and the substantial majority of State jurisdictions in setting a traditional probable cause standard at these hearings and allowing probable cause to be based on reliable hearsay, the probable cause hearing would still differ meaningfully from a clerk-magistrate's issuance of an arrest warrant or complaint. While the probable cause standard would be the same, the judicial screening of probable cause would be performed by a judge, not a clerk-magistrate, and would be adversarial in nature, with the defendant having the opportunity to cross-examine prosecution witnesses and call his

own witnesses. See G. L. c. 276, § 38; 4 W.R. LaFave, J.H. Israel, N.J. King, & O.S. Kerr, Criminal Procedure, *supra* at § 14.3(a), at 321.

Because no party in this case asked us to revisit our decision in *Myers*, and because the issue was not briefed by the parties or any amicus, I do not suggest that we should do so here. However, I suggest that the standard of proof and the requirement of admissible evidence we established in *Myers* need to be revisited in an appropriate case, because our present interpretation of the law governing probable cause hearings is resulting in criminal defendants being denied the opportunity to have a timely judicial determination whether there is probable cause to believe them guilty of a crime. Until we revisit *Myers*, for all practical purposes the only determination of probable cause after arrest will be made by a grand jury at a time determined by the prosecutor that, depending on the nature of the case, may be many months after the defendant's initial appearance.[7]

----

[7]Chief Justice Ireland's concurrence complains that I have "stake[d] out" a position on a significant legal issue without the issue having been raised, briefed, or argued, and that I should not discuss the issue until it is squarely raised in a case before us. See *post* at 113 (Ireland, C.J., concurring). In general, I agree that we should await full briefing until we decide an issue, which is why, rather than suggest that we should decide this issue in the case before us, I suggested *supra* "that the standard of proof and the requirement of admissible evidence we established in *Myers* needs to be revisited in an appropriate case." To the extent that the concurrence suggests it is inappropriate to recognize that our present interpretation of the law governing probable cause hearings is proving to be dysfunctional because it results in criminal defendants being denied the opportunity to have a timely judicial determination whether there is probable cause to believe them guilty of a crime, I disagree, especially where, as here, the issue is likely to continue to elude review unless someone on the court expresses a willingness to revisit our decision in *Myers*. Even with such a willingness expressed, the issue is not easily presented on appeal. In the rare case where a defendant is granted a probable cause hearing, it would be unlikely that a defendant would claim on appeal that the directed verdict standard is too demanding a standard of probable cause and that the traditional probable cause standard is more appropriate. A prosecutor arguably could challenge the standard in the unusual case where a probable cause hearing is conducted and no probable cause is found under the *Myers* standard, but why would her office bring such an appeal if it may foreseeably result in more (and more timely) probable cause hearings, albeit under a traditional probable cause standard? Because a judicial fix of the dysfunction may be unlikely, the Legislature may need to step in to make the repair, as it did in New York State. See Staff Comment, Proposed New York Criminal Procedure Law § 90.60, at 137-138 (1967), now codified at N.Y.

IRELAND, C.J. (concurring). I agree entirely with the court. I write separately only to register my concerns about the concurring opinion that challenges the probable cause standard set forth in *Myers* v. *Commonwealth*, 363 Mass. 843 (1973). The concurrence acknowledges, as it must, that the issue it addresses — whether the *Myers* standard should be changed — was not raised or briefed by either side and is not essential to the resolution of this case. *Ante* at 112. It nevertheless goes on to discuss the issue in considerable detail and makes the case that the standard should be changed. This obviously would represent a significant change in Massachusetts law.

I do not think this court does its best work when we make up our minds and stake out our positions on significant legal issues like this, before the issues have even been raised by the parties, brought before us, and briefed and argued for our consideration.[1] As an appellate court in an adversarial system, our principal responsibility is to consider the cases on appeal as they are presented to us by the parties; the very definition of an adversary system is that the parties, through their written and oral arguments, crystallize the issues for our consideration, and we then consider, digest, analyze, and test those arguments as we decide the cases. There are sound, time-tested reasons for this approach, not the least of which is that our decisions are better informed when the rules of law we discuss and apply (and sometimes cre-

Crim. Proc. Law § 180.60 (McKinney 1975) (discussing New York's legislative shift from "prima facie case" standard to less-demanding "reasonable cause" standard).

[1] I note that none of the eleven attorneys who submitted affidavits in support of the defendant's petition pursuant to G. L. c. 211, § 3, stated that he or she was concerned with the standard set forth in *Myers* v. *Commonwealth*, 363 Mass. 843 (1973). The concern was that, in practice, no probable cause hearings were held and that continuances were granted as a matter of course. Indeed, one attorney set forth the advantages that accrued in counties where probable cause hearings were held, averring, "[T]he hearings were usually beneficial to both parties, allowing for greater and prompter discovery for the defense and . . . prosecution, allowing for testimony to be preserved, and providing an opportunity . . . to weed out weak cases. . . . The defense was also better informed of the evidence, and . . . benefit[ted] by actually seeing the witnesses and evidence." See *Myers* v. *Commonwealth*, *supra* at 847-848, quoting *Coleman* v. *Alabama*, 399 U.S. 1, 9 (1970) (advantages of preliminary hearing are exposing weaknesses in State's case, using testimony to create impeachment tool for trial, discovering State's case in order to prepare effective defense, and making effective arguments for accused).

ate or modify) have been vetted through the adversarial process of trial and appeal.[2] See F.M. Coffin, On Appeal: Courts, Lawyering, and Judging 258 (W.W. Norton & Co. 1994) (identifying "five fundamental features of our American appellate system that work to confine judicial discretion").

Of course there are times when we might need to address an issue that was not raised and preserved in the trial court; or when we might discuss an issue that is not absolutely necessary to the disposition of the appeal; or when we might decide the occasional moot case, where the issues are important and would otherwise escape appellate review. But even then we should be chary about discussing and deciding issues without the benefit of hearing both sides.

That said, and even though I was one of the counsel of record for the prevailing petitioner in the *Myers* case, I am not averse to revisiting that decision if and when it becomes appropriate to do so. I will wait to hear the arguments from both sides, however, and from any amici who might have information to contribute, before I reach any conclusions about whether the *Myers* standard should be retained or changed.

---

[2]For example, the concurrence states that a "substantial majority of jurisdictions" does not use the directed verdict standard set forth in *Myers* v. *Commonwealth, supra* at 850. *Ante* at 109 & n.5. I point out that the court in the *Myers* case based the directed verdict standard on a study by the American Bar Association and on the draft of a model code. *Myers* v. *Commonwealth, supra* at 850 n.7, citing F. Miller, Prosecution: The Decision to Charge a Suspect With Crime ("this 'directed verdict' definition of probable cause is the most common screening standard practised in other States which have probable cause hearings"), and Graham & Letwin, The Preliminary Hearing in Los Angles, 18 UCLA L. Rev. 636, and American Law Institute, A Model Code of Pre-Arraignment Procedure (Tent. Draft No. 5) § 330.5(3) ("[Probable] cause to hold the defendant for trial exists . . . when the evidence introduced at the preliminary hearing would support a guilty verdict"). This seeming discrepancy presumably would have been vetted fully if the directed verdict standard was before the court. In addition, according to a memorandum of law that the defendant submitted in support of his petition for extraordinary relief pursuant to G. L. c. 211, § 3, many of the jurisdictions cited by the concurrence as having rejected the directed verdict standard have statutes or rules that, unlike the Commonwealth, have a very short time frame (fourteen days) for holding a probable cause hearing, or require the prosecution to demonstrate good cause or extraordinary circumstances to justify delay or continuance. The degree to which the rejection of a directed verdict standard is related to the existence of these rules and statutes would also have been vetted if the issue was properly before this court.